**William Burl ROUDYBUSH and Ruth J. Roudybush, Appellants,**

**v.**

**Ralph W. ZABEL, Zabel Ltd. and First National Bank in Lenox, Appellees.**

No. 85–2319.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1986.

Decided March 6, 1987.

Rehearing Denied April 1, 1987.

Garry D. Woodward, Des Moines, Iowa, for appellants.

Joseph R. Sandre, Des Moines, Iowa, for appellees.

Before JOHN R. GIBSON, Circuit Judge, FAIRCHILD,* Senior Circuit Judge, and MAGILL, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

William and Ruth Roudybush appeal from a summary judgment entered against them on their section 1983 claim. They allege that the appellees unlawfully instituted Iowa's execution of judgment procedures and, acting jointly with state officials, deprived them of their property without due process. In granting summary judgment, the district court[1] concluded that the private party appellees did not act "under color of" state law when they implemented constitutional state execution of judgment procedures in an unlawful manner. The Roudybushes argue that because the appellees acted jointly with state officials in depriving the Roudybushes of their property, the deprivation constitutes state action. They also argue that the district court erroneously denied their motion to have the court open the judgment and allow the filing of a second amended complaint. We reject both arguments and affirm the judgment of the district court.

In reviewing this grant of summary judgment, all facts must be viewed in the light most favorable to the Roudybushes, giving them the benefit of all reasonable inferences to be drawn from the facts. *Poolman v. Nelson*, 802 F.2d 304, 306 (8th Cir.1986). We so state the facts based on the record before the district court.

On April 21, 1978 in the Union County, Iowa District Court, the First National Bank in Lenox, in one action, and Ralph Zabel and Zabel Ltd., in another, were awarded substantial monetary judgments against Gary and Karyn McKinney. The McKinneys appealed from both judgments to the Iowa Supreme Court, where the actions were consolidated. In order to stay execution proceedings under the district court judgments, the McKinneys filed a supersedeas bond with the Clerk of the Union County District Court.[2] The Roudy-

---

* The HONORABLE THOMAS E. FAIRCHILD, Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. The Honorable W.C. Stuart, United States District Judge for the Southern District of Iowa.

2. Rule 7(a) of the Iowa Rules of Appellate Procedure provides:

   No appeal shall stay proceedings under a judgment or order unless appellant executes a bond with sureties, to be filed with and approved by the clerk of the court where the judgment or order was entered. The condition of such bond shall be that appellant will satisfy and perform the judgment if affirmed, or any judgment or order, not exceeding in amount or value the obligation of the judgment or order appealed from, which an appellate court may render or order to be rendered by the trial court; and also all costs and damages adjudged against him on the appeal, and all rents of or damage to property during the pendency of the appeal of which appellee is deprived by reason of the appeal.

bushes signed this supersedeas bond as sureties.

On September 25, 1981, the Iowa Supreme Court dismissed the McKinneys' appeal for failure to prosecute, and, on November 2, remanded the case to the Union County District Court. No judgment was ever entered on the supersedeas bond by either the Iowa Supreme Court or the Union County District Court. Thus, the Roudybushes, as sureties on the supersedeas bond, were not lawfully subject to the claims of the appellees, as judgment creditors.[3]

Nevertheless, on December 17, 1981 the appellees orally instructed Dorothy Henry, the Clerk of the Union County District Court, to issue a writ of execution directing the Union County Sheriff to levy upon real property referred to as the Dolecheck Farm. Henry issued the writ of execution, apparently believing that the McKinneys owned the Dolecheck Farm when, in fact, the Roudybushes owned it. After obtaining the writ of execution, the appellees filed a praecipe, which indicated that the writ was directed to the Roudybushes' property and was based on a judgment entered on the supersedeas bond. Henry did not read this praecipe.

The appellees presented the writ of execution to the Union County Sheriff. On December 30, 1981, the sheriff levied on the Dolecheck Farm, and the farm was subsequently sold at an execution sale to the First National Bank in Lenox for $100,-000. This $100,000 was then applied pro rata to the judgments obtained against the McKinneys by the First National Bank, in one action, and Ralph Zabel and Zabel Ltd., in the other action.

In an unrelated mortgage foreclosure action against the Roudybushes in the Ringgold County, Iowa District Court, the First National Bank in Lenox was awarded a judgment of approximately $122,000, and the court ordered a foreclosure sale of the subject property, the Roudybushes' Haley Farm. The First National Bank successfully bid $200,000 on the Haley Farm, which created a $66,000 overplus after costs were paid. This overplus was transferred to the Clerk of the Court for Ringgold County, the county in which the Haley Farm is located. Ralph Zabel and Zabel Ltd. then obtained a writ of execution from the Clerk of the Union County District Court directed at the overplus in the hands of the Ringgold County Clerk. The writ of execution was obtained based on the misrepresentation by Ralph Zabel and Zabel Ltd. that they possessed unfulfilled judgments against the Roudybushes premised on the supersedeas bond filed in the McKinney action. The Union County Sheriff levied on the overplus, and the proceeds were applied pro rata to the unfulfilled judgments held by Ralph Zabel and Zabel Ltd. in the McKinney action.[4]

Based on these events, the Roudybushes instituted an action against the appellees[5]

3. The Roudybushes made several allegations concerning the validity of the supersedeas bond and the propriety of events surrounding its creation. They contended that the supersedeas bond was invalid because it was approved by the Clerk of the Ringgold County District Court rather than the Clerk of the Union County District Court, the court where the judgment against the McKinneys was entered. *See* Iowa R.App.P. 7(a). They also alleged that they were fraudulently induced by the McKinneys to sign the bond based on the misrepresentation that the McKinneys had assets that would be levied upon if no bond was filed. Actually, the Roudybushes alleged, the McKinneys had no such assets; the sheriff had already returned a general writ of execution against the McKinneys' property wholly unsatisfied.

3. In Iowa, a surety on a supersedeas bond incurs no liability until a judgment is entered against the surety. If an appellate court affirms the judgment appealed from, it can either render judgment against the appellant and the surety on the bond, thus rendering the surety liable, or it can remand the action to the trial court. Iowa R.App.P. 9.

4. The apparent net effect of this incident was a transfer of roughly $66,000 from the First National Bank to Ralph Zabel and Zabel Ltd. The Roudybushes contend they were unlawfully used as an intermediary in this transfer. The net result, they argue, should have been that the $66,000 remained in their hands. *See* Iowa Code Ann. § 626.82 (West 1950).

5. Dorothy Henry, the Clerk of the Union County District Court, was also joined as a defendant in the original complaint. Prior to the district court's entry of summary judgment, she was

under 42 U.S.C. § 1983 (1982).[6] They alleged that the appellees unlawfully initiated execution of judgment procedures based on a supersedeas bond that had never been placed in judgment. This unlawful action triggered negligent action by state officials, which caused the deprivation without due process of both the Roudybushes' Dolecheck Farm and the overplus from the sale of the Haley Farm.

The appellees filed a motion for summary judgment, arguing that the alleged joint action between state officials—the Union County Sheriff and the Clerk of the Union County District Court—and the appellees did not, by itself, establish that the appellees acted "under color of" state law under section 1983. Specifically, the appellees argued that their actions were not attributable to any state policy, and thus, the Roudybushes had failed to allege facts that satisfied the first component of the two-part state action test announced in *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). The district court granted the appellees' summary judgment motion, relying primarily on the Supreme Court's factual application of the two-part test enunciated in *Lugar. See id.* at 940, 102 S.Ct. at 2755.

Within ten days of the district court's entry of judgment, the Roudybushes filed a motion under Federal Rule of Civil Procedure 59(e) asking the court to open the judgment and allow the Roudybushes to file a second amended complaint. The district court denied the motion. This appeal followed.

## I.

In reviewing the district court's decision to grant summary judgment, we apply the same standard as the district court. *Poolman v. Nelson,* 802 F.2d at 307. Summary judgment should be granted only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

Under section 1983, the plaintiff must show that the defendant deprived him of a constitutional right while acting "under color of" state law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). The issue here is whether the Roudybushes have alleged facts sufficient to show that the private party appellees were acting "under color of" Iowa law when they unlawfully instituted facially constitutional execution of judgment procedures and, with the assistance of state officials, deprived the Roudybushes of property without due process. In *Lugar v. Edmondson Oil Co.,* 457 U.S. at 922, 102 S.Ct. at 2745, the Supreme Court held that in a section 1983 case where a private party defendant performs an act ordinarily performed by private parties and it triggers action by state officials, the defendant's actions are committed "under color of" state law if the conduct qualifies as state action under the fourteenth amendment. *Id.* at 935, 102 S.Ct. at 2752. The issue thus hinges on whether the defendant's "conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State." *Id.* at 937, 102 S.Ct. at 2753.

This fair attribution test has two components: a state policy and a state actor. The state policy component requires that "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." *Id.* A state policy may be inferred from either a state statute, *see id.* at 940–41, 102 S.Ct. at 2755–56, or a well-settled custom or practice, *see Adickes v. S.H. Kress & Co.,* 398 U.S. at 168, 90 S.Ct. at 1613. The state actor component requires that the defendant "must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he

---

voluntarily dismissed upon the Roudybushes' motion.

**6.** If the appellees' actions were as egregious as the Roudybushes alleged, the Roudybushes probably could have maintained several state tort law causes of action, some of which might have merited punitive damages. No such claims were pleaded in this action.

has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2754.

█ The appellees' actions, as alleged by the Roudybushes, fail to satisfy the state policy component of *Lugar's* fair attribution test. The Roudybushes allege only that the appellees violated Iowa's execution of judgment statutes. They expressly disavow any claim that the appellees acted pursuant to an unconstitutional statute[7] or that the process by which the Roudybushes were deprived of their property—a process that included negligent action by state officials—conformed to a permanent and well-settled practice of the State. If anything, the Roudybushes' allegations are antithetical to a claim that the appellees' actions are attributable to a state policy. They claim that the appellees intentionally *violated* state policy by failing to adhere to Iowa's laws governing the execution of judgments.

█ State policy is not implicated when an injured party claims that a private party has violated a constitutional post-judgment procedural statute in the course of depriving the injured party of his property. To the contrary, the state, by enacting the statute, has expressly condemned a deprivation by such means. In addressing the facts before it, the *Lugar* Court made clear that a private party's unlawful use of a constitutional state procedural statute does not, by itself, satisfy the state policy component of *Lugar's* fair attribution test. The petitioner in *Lugar* presented two relevant counts. Count one challenged the private party respondents' use of Virginia's allegedly unconstitutional pre-judgment attachment statute; this allegation satisfied the state policy component. *Id.* at 940–41, 102 S.Ct. at 2755–56. Count two alleged that the respondents used the State's pre-

sumably constitutional procedural scheme in an unlawful manner; this allegation did not satisfy the state policy component. *Id.* at 940, 102 S.Ct. at 2755. The Court explained:

> Count two alleged that the deprivation of property resulted from respondents' "malicious, wanton, willful, opressive [*sic*], [and] unlawful acts." By "unlawful," petitioner apparently meant "unlawful under state law." To say this, however, is to say that the conduct of which petitioner complained could not be ascribed to any governmental decision; rather, respondents were acting contrary to the relevant policy articulated by the State. Nor did they have the authority of state officials to put the weight of the State behind their private decision, *i.e.*, this case does not fall within the abuse of authority doctrine recognized in *Monroe v. Pape*, 365 U.S. 167 [81 S.Ct. 473, 5 L.Ed.2d 492] (1961). That respondents invoked the statute without the grounds to do so could in no way be attributed to a state rule or a state decision. Count two, therefore, does not state a cause of action under § 1983 but challenges only private action.

*Id.*

█ Accordingly, this court has held, as we do here, that *Lugar's* state policy component is not met when the private party charged with an unconstitutional deprivation has allegedly acted unlawfully with respect to a constitutional state statute. *Higbee v. Starr*, 698 F.2d 945, 946 (8th Cir.1983) (per curiam). Likewise, we have consistently found that *Lugar's* state policy component is met when the party charged with an unconstitutional deprivation has acted in conformity with an allegedly unconstitutional state statute or well-settled custom. *See, e.g., Buller v. Buechler*, 706 F.2d 844, 848 (8th Cir.1983); *Ruffalo by Ruffalo v. Civiletti*, 702 F.2d

---

7. "It is not claimed in the present case that the State of Iowa's execution laws or procedures are unconstitutional." Appellants' Brief at 10. To the contrary, the Roudybushes contend that the supersedeas bond was "obtained by fraudulent inducement," App. at 26, and that the appellees induced the sheriff to act upon an invalid bond.

Because this fraudulent activity is not attributable to any state policy, and in fact is contrary to it, we need not consider whether the appellees engaged in "joint participation with state officials in the seizure of disputed property," *Lugar*, 457 U.S. at 941, 102 S.Ct. at 2756.

710, 717 (8th Cir.1983); *Lewis Service Center, Inc. v. Mack Financial Corp.,* 696 F.2d 66, 68 n. 2 (8th Cir.1982).

## II.

The Roudybushes contend that the district court erred in denying their motion under Rule 59(e) of the Federal Rules of Civil Procedure to have the court open the judgment and allow the filing of a second amended complaint. We hold that the district court did not abuse its discretion in denying this motion.

In support of their Rule 59(e) motion, the Roudybushes contended that their complaint did in fact allege that Iowa's rules of appellate procedure are unconstitutional because they fail to require notice and a hearing prior to the entry of judgment on a supersedeas bond. The district court rejected this argument for two reasons. First, the Roudybushes never made such an allegation prior to the entry of summary judgment. Second, even if they made this allegation or were allowed to amend their complaint to make such an allegation, the Roudybushes could not claim, consistently with their prior allegations, that the appellees acted pursuant to this allegedly unconstitutional Iowa law to deprive them of their property. The crux of the Roudybushes' claim was that the appellees violated Iowa law by instituting execution of judgment procedures based on a supersedeas bond that had *not* been entered into judgment. Thus, even if Iowa's laws concerning the entry of judgment on a supersedeas bond were unconstitutional, the Roudybushes' complaint would still fail to state a section 1983 cause of action.

A district court has broad discretion in determining whether to open a judgment pursuant to a Rule 59(e) motion. *Harris v. Arkansas Department of Human Services,* 771 F.2d 414, 416–17 (8th Cir.1985) (citing cases). The court's decision will not be reversed unless there is a clear showing of abuse of discretion. *Id.* at 417. The district court did not abuse its discretion in denying the Roudybushes' Rule 59(e) motion.

The judgment of the district court is affirmed.