REUBEN H. DONNELLEY CORPORATION, Plaintiff and Counterdefendant-Appellee, v. RICHARD BRAUER, d/b/a Law Offices of Richard Brauer, Defendant and Counterplaintiff-Appellant (Richard Brauer, Defendant and Counterplaintiff-Appellant; Reuben H. Donnelley Corporation *et al.*, Counterdefendants-Appellees).

First District (5th Division)   No. 1—93—0710

Opinion filed September 15, 1995.

Richard L. Brauer, of Chicago, appellant *pro se.*

Robert J. Slobig and Mark T. Ostrowski, both of Chicago, for appellees.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff Reuben H. Donnelley Corporation (Donnelley) brought a breach of contract action against defendant Richard Brauer, an attorney, alleging a failure to pay for charges associated with classified advertisements in the "Yellow Pages" directories published by plaintiff. Brauer filed an answer which included several affirmative defenses and counterclaims. Two of Brauer's counterclaims in his "Amended Answer, Third Amended Affirmative Defenses and Third Amended Counterclaims," are the subject of the instant appeal. Those counterclaims alleged that Donnelley's attorneys, McDermott, Will & Emery (McDermott), violated Brauer's civil rights (count VI) and that Donnelley and McDermott aided and abetted the commission of a tort against Brauer (count VII). The instant appeal, brought under Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), is taken from the trial court's dismissal with prejudice of counts VI and VII of Brauer's third amended counterclaims pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)). Brauer contends that the dismissal was improper.

■ A section 2—615 motion to dismiss is used to attack defects in a pleading and does not test the plaintiff's ability to recover where a cause of action is adequately stated. (*Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267.) When ruling on a motion to dismiss, all well-pleaded facts in the complaint are admitted and taken as true. (*E.g., Michael Reese Hospital & Medical Center v. Chicago HMO, Ltd.* (1990), 196 Ill. App. 3d 832, 554 N.E.2d 472.) A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved under the pleadings which will entitle a plaintiff to recover. *E.g., Zadrozny v. City Colleges of Chicago* (1991), 220 Ill. App. 3d 290, 581 N.E.2d 44.

## I. SECTION 1983 COUNTERCLAIM

Count VI of Brauer's third amended counterclaims alleged that Donnelley's attorneys, McDermott, Will & Emery (McDermott), violated Brauer's civil rights pursuant to section 1983 of the Civil Rights Act of 1871 (42 U.S.C. § 1983 (1988)) by depriving him of "fair and equal access to the courts and to hearing of his defenses." Specifically, Brauer alleged that McDermott purposely delayed service of process for over a year by instructing the sheriff of Cook County to attempt service at Brauer's business offices on 12 occasions knowing or having reason to believe that service would not likely occur because Brauer occupied his offices on an appointment-only basis and no appointments had been made. Brauer further alleged that McDermott did this:

"in order to accomplish MWE's [McDermott, Will & Emery's] objectives of

(a) changing the issue in the litigation from the validity and legitimacy of Plaintiff's alleged contracts *** to whatever advantage Plaintiff might garner from the passage of time and the fact Defendant was an attorney who could be made to appear dilatory by not being where service could be made.

(b) making it appear that Plaintiff and its attorneys were being reasonably diligent in attempting to effectuate service.

(c) make Defendant suffer a deprivation of his rights to access to the courts and to a fair hearing to defend this action by making it more probable that vital evidence would be lost and material witnesses would become unavailable through the passage of time."

In dismissing with prejudice count VI of Brauer's third amended counterclaims, the court found that Brauer's allegations concerning service of process failed to allege facts that rose to the level of intrusive State action. The court also found that there was no denial of due process because of the adequacy of remedies provided by Illinois law pursuant to Supreme Court Rule 103(b) (87 Ill. 2d R. 103(b) (dismissal for lack of diligence in obtaining service)).

■ A section 1983 action can be maintained against "[e]very person who, under color of any statute *** of any State *** subjects *** any citizen *** to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." (42 U.S.C. § 1983 (1988).) The purpose of such an action is to deter State actors from using the badge of their authority to deprive individuals of their federally guaranteed rights. (*E.g.*, *Wyatt v. Cole* (1992), 504 U.S. 158, 118 L. Ed. 2d 504, 112 S. Ct. 1827.) While the more typical section 1983 action is brought against a State officer, a private person may also be subject to liability under section 1983 if State action is found. *Apostol v. Landau* (7th Cir. 1992), 957 F.2d 339.

■ To establish a section 1983 action, the plaintiff must establish: (1) that the defendant deprived him of a right secured by the "Constitution and laws" of the United States; and (2) that the defendant deprived him of this constitutional right "under color of law." (*Adickes v. S.H. Kress & Co.* (1970), 398 U.S. 144, 150, 26 L. Ed. 2d 142, 150, 90 S. Ct. 1598, 1604.) A private party acts under color of law if his actions satisfy the following two conditions: (1) the deprivation of the Federal right must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible; and (2) the private party must act together with or obtain significant aid from State officials or engage in conduct otherwise chargeable to the State.

(*Lugar v. Edmondson Oil Co.* (1982), 457 U.S. 922, 932-35, 73 L. Ed. 2d 482, 491-94, 102 S. Ct. 2744, 2751-52; see *Wyatt v. Cole,* 504 U.S. 158, 118 L. Ed. 2d 504, 112 S. Ct. 1827.) Generally, with respect to the first condition, State action or action under color of State law will not be found where the only conduct alleged is the private person's use of State-sanctioned remedies or procedures. (*Flagg Brothers, Inc. v. Brooks* (1978), 436 U.S. 149, 56 L. Ed. 2d 185, 98 S. Ct. 1729 (private party's enforcement of warehouseman's lien pursuant to provisions of Uniform Commercial Code); *Winterland Concessions Co. v. Trela* (7th Cir. 1984), 735 F.2d 257 (mere use of courts, without more, does not constitute State action); *Executive Commercial Services, Ltd. v. Daskalakis* (1979), 74 Ill. App. 3d 760, 393 N.E.2d 1365 (private party's use of *ne exeat* statute).) Stated another way, a private party's use of a constitutional State procedural statute, to cause an unconstitutional deprivation, does not satisfy the State policy condition for State action. *Roudybush v. Zabel* (8th Cir. 1987), 813 F.2d 173.

Generally, with respect to the second condition which must be satisfied to establish action under color of State law, a private party can be characterized as a State actor if the private party has acted together with or has obtained significant aid from State officials or if the private party's conduct is otherwise chargeable to the State. (*Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 73 L. Ed. 2d 482, 102 S. Ct. 2744.) When the private party relies upon a constitutional State law to cause an unconstitutional deprivation, the private party does not become a State actor unless he conspires with and is a "willful participant in joint activity with the State or its agents." (*Adickes v. S.H. Kress & Co.* (1970), 398 U.S. 144, 152, 26 L. Ed. 2d 142, 151, 90 S. Ct. 1598, 1606.) As stated in *Gramenos v. Jewel Cos.* (7th Cir. 1986), 797 F.2d 432, 435:

> "Although private parties call on the aid of state law 'without the grounds to do so', when the private decision may 'in no way be attributed to a state rule or a state decision' (*Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 940, 102 S. Ct. 2744, 2755, 73 L. Ed. 2d 482 (1982)), the private parties are not state actors. There must be a conspiracy, an agreement on a joint course of action in which the private party and the state have a common goal."

See *Moore v. Marketplace Restaurant, Inc.* (7th Cir. 1985), 754 F.2d 1336 (evidence of some concerted effort or plan between the citizen and the State official is necessary); *Earnest v. Lowentritt* (5th Cir. 1982), 690 F.2d 1198 (private party's use of State court is not State action unless there is corruption of judicial power).

In the instant case Brauer contends that his counterclaim against McDermott set forth sufficient allegations of State action. The rele-

vant allegations state that McDermott "made extensive use of state procedures with the overt significant assistance of the office of the Sheriff *** by directing the Sheriff's office to attempt service" and that McDermott's employees "embarked upon a joint state action *** with the office of the Sheriff *** in order to put the weight of the State behind the facade of attempting service of process." In reliance on *Lugar v. Edmondson Oil Co.* (457 U.S. 922, 73 L. Ed. 2d 482, 102 S. Ct. 2744) and *Del's Big Saver Foods, Inc. v. Carpenter Cook, Inc.* (7th Cir. 1986), 795 F.2d 1344, Brauer argues these allegations establish sufficient joint participation by McDermott and the sheriff under section 1983.

■ We disagree. First, we note that Brauer's allegations are insufficient in that they do not satisfy the first requirement of the two-part analysis for the State action determination. Brauer has not alleged that the private party, McDermott, acted pursuant to an unconstitutional State statute or procedure. Rather, the counterclaim alleges the misuse of the State's procedures governing service of process in that McDermott provided false addresses and thereby prevented service of process by the sheriff. As noted above, a private party's misuse or unlawful use of a constitutional State procedural statute does not satisfy the State policy requirement. (*Roudybush v. Zabel*, 813 F.2d 173.) As noted in *Lugar*, allegations that a private party has acted contrary to State law admit that the conduct complained of "could not be ascribed to any governmental decision *** [and] could in no way be attributed to a state rule or a state decision." (*Lugar*, 457 U.S. at 940, 73 L. Ed. 2d at 497, 102 S. Ct. at 2755.) Thus, the alleged actions by McDermott in misusing service procedures could not be attributed to State policy (see *Roudybush v. Zabel*, 813 F.2d 173) and do not state a cause of action under section 1983. See *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 73 L. Ed. 2d 482, 102 S. Ct. 2744; *Siefkes v. Nichols* (D. Kan. 1992), 788 F. Supp. 477 (section 1983 action dismissed where petition alleged private party's misuse of State procedure by submission of false affidavit); *Chicarelli v. Plymouth Garden Apartments* (E.D. Pa. 1982), 551 F. Supp. 532 (private party's noncompliance with State rules of civil procedure does not constitute section 1983 violation).

Brauer's remedy for the alleged private misuse of a constitutional procedural statute was to seek recourse in the State court, which he had done by filing a motion to dismiss pursuant to Supreme Court Rule 103(b) (87 Ill. 2d R. 103(b) (failure to exercise reasonable diligence to obtain service)). The trial court denied that motion, effectively finding that service had not been unreasonably dilatory. That finding and denial of Brauer's motion to dismiss plaintiff's com-

plaint are not reviewable by this court in the instant Supreme Court Rule 304(a) appeal taken from the dismissal of certain of defendant's counterclaims.

The allegations of the instant counterclaim also are insufficient for purposes of establishing color of law in that they do not allege the requisite joint participation between the private party and State officials. When the private party's actions are not attributable to an unconstitutional State procedural scheme, the private party is not a State actor unless he conspires or agrees on a joint course of conduct with a State official to cause the constitutional deprivation. (*Gramenos v. Jewel Cos.*, 797 F.2d 432; *Earnest v. Lowentritt*, 690 F.2d at 1200 ("requisite 'joint participation' envisioned in *Adickes* goes beyond the mere use of the state court system by private litigants in the course of an ordinary lawsuit").) The joint action component requires that both the public and private actors share a common, unconstitutional goal and that each of them is in some part motivated by that unconstitutional purpose. *Cunningham v. Southlake Center for Mental Health, Inc.* (7th Cir. 1991), 924 F.2d 106.

Brauer's allegations do not allege sufficient acts of joint efforts by McDermott and the sheriff. Brauer did not allege that McDermott and the sheriff conspired together, shared a common unconstitutional goal, or acted jointly to deprive him of a constitutional right. He also did not allege that the actions of both McDermott and the sheriff were motivated by an unconstitutional purpose. While Brauer's counterclaim can be read to allege wrongful motive and action by McDermott, such conduct was unilateral. The only factual, nonconclusory acts alleged by Brauer to have been committed by the sheriff were the sheriff's acts of attempted service pursuant to procedures which in and of themselves were not illegal or unconstitutional. While the sheriff's attempts at service may have been unsuccessful, due to the alleged incorrectness of the addresses supplied to him, the sheriff's acts were not wrongful and did not deprive Brauer of any constitutional rights. The wrongfulness of the conduct was not the act of attempted service but in the alleged wrongful motive of the private entity who requested service and who specified the allegedly false addresses where service was to be made. A private party "cannot unilaterally convert a state actor's legitimate activity into an illegal act." (*Cunningham*, 924 F.2d at 108.) Absent allegations of wrongful conduct and motive by the sheriff, Brauer has merely alleged the performance of a ministerial act, namely, the sheriff's serving process and the simple nondiscretionary discharge of the duties of his office. This is not sufficient State participation upon which to transform a private party's conduct into State action for purposes of

section 1983 liability where the State's conduct is not wrongful in and of itself. See *Cobb v. Saturn Land Co.* (10th Cir. 1992), 966 F.2d 1334 (ministerial filing of a lien statement by county clerk); *Winterland Concessions Co. v. Trela*, 735 F.2d 257 (execution of seizure orders by marshals and police without factual allegations of conspiracy).

Contrary to Brauer's assertions, *Lugar* and *Del's Big Saver Foods, Inc.* do not save his section 1983 counterclaim. It is true that in *Lugar* and in *Del's Big Saver Foods, Inc.*, State action was found to have been alleged where the private party merely invoked the aid of a State statute, causing a deprivation of property, even though the complaint lacked any allegation of conspiracy or complicity by the private and State actors. Those cases are not applicable to the instant case, however, for two reasons. First, in those cases State statutes authorized the prejudgment property seizures and the constitutionality of those statutes was challenged. Here, as noted above, Brauer does not challenge the constitutionality of a State statute or procedure but, rather, the misuse or violation of a State procedure. *Lugar* specifically stated the "private misuse of a state statute does not describe conduct that can be attributed to the State." (*Lugar*, 457 U.S. at 941, 73 L. Ed. 2d at 498, 102 S. Ct. at 2756.) A second basis for distinction lies in the fact that *Lugar* and, by implication, its progeny were specifically limited to *ex parte* prejudgment attachment cases. (*Lugar*, 457 U.S. at 942, 73 L. Ed. 2d at 498, 102 S. Ct. at 2756 ("Whatever may be true in other contexts, this is sufficient when the State has created a system whereby state officials will attach property on the *ex parte* application of one party to a private dispute"); see also 457 U.S. at 939 n.21, 73 L. Ed. 2d at 497 n.21, 102 S. Ct. at 2755 n.21 ("The holding today, as the above analysis makes clear, is limited to the particular context of prejudgment attachment").) As stated in *Earnest v. Lowentritt*:

> "The Supreme Court has characterized the private use of state legal procedures for purposes of the Fourteenth Amendment as attributable to the state only in situations where the state has created a system which allows state officials to attach property on *ex parte* application. *** It is in these *ex parte, prejudgment* situations that the courts have found the state is itself participating in the deprivation of property, and the constitutional requirements of due process apply. Private misuse of a state statute alone does not describe conduct that can be attributed to the state. It is the procedural scheme created by the statute that is state action, and therefore subject to constitutional restraints. *Lugar v. Edmondson Oil Co., supra.* The absence of a full adversary adjudication prior

to seizure triggers the constitutional due process issue since state officers typically act jointly with a private creditor in securing the property in dispute." (Emphasis in original.) (690 F.2d at 1201.) (See also *Cunningham*, 924 F.2d at 107 (wrongful discharge case; "joint action amounts to alleging some agreement between private and public actors to violate plaintiff's constitutional rights").) We note that *Cunningham v. Southlake Center for Mental Health, Inc.*, which upholds the need for allegations of conspiracy in nonprejudgment attachment cases, was decided by the Seventh Circuit Court of Appeals after its decision in *Del's Big Saver Foods, Inc.* Thus, Brauer's failure to allege conspiratorial acts or a shared motive by McDermott and the sheriff to deprive Brauer of a constitutional right makes his section 1983 counterclaim insufficient and the trial court correctly dismissed that counterclaim on the basis of insufficient State action.

Lastly, while not considered by the trial court, Brauer's section 1983 counterclaim also fails because it did not satisfy the first requirement of a section 1983 action; that is, Brauer did not allege a *provable* deprivation of a constitutionally protected right. (*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 73 L. Ed. 2d at 82, 102 S. Ct. 2744; *Adicks v. S.H. Kress & Co.*, 398 U.S. 144, 26 L. Ed. 2d 142, 90 S. Ct. 1598; *Gramenos v. Jewel Cos.*, 797 F.2d 432; *Winterland Concessions Co. v. Trela*, 735 F.2d 257 (to state a claim for relief under section 1983, complaint must allege deprivation of a constitutional right and that the deprivation occurred under color of law).) Brauer alleged that he was deprived of his constitutional right to equal access to the courts and to a fair hearing of his defenses due to the misuse of State service of process procedures to delay service of process for over a year. Access to the courts is a constitutionally protected right, the interference with or denial of which could form the basis for a section 1983 action. (See, *e.g.*, *Bounds v. Smith* (1977), 430 U.S. 817, 52 L. Ed. 2d 72, 97 S. Ct. 1491; *Graham v. National Collegiate Athletic Association* (6th Cir. 1986), 804 F.2d 953; *Harrison v. Springdale Water & Sewer Comm'n* (8th Cir. 1986), 780 F.2d 1422; *Henriksen v. Bentley* (10th Cir. 1981), 644 F.2d 852; *Sigafus v. Brown* (7th Cir. 1969), 416 F.2d 105.) Here, however, Brauer was not denied access to the courts and was able to present his defenses to the complaint filed against him. While Brauer may have experienced a delay in presenting his defenses, he has failed to establish how the delay rose to any constitutional dimension, especially since that delay was substantially less than the minimal five-year statute of limitations period applicable to the breach of contract action filed against him by Donnelley.

## II. TORT COUNTERCLAIM

Brauer next contends that the trial court erred in dismissing count VII of his amended counterclaims, which alleged that Donnelley and McDermott aided and abetted in the commission of a tort. Specifically, that count alleged that Brauer had a private directory service agreement with Illinois Bell Telephone Company (Illinois Bell) that prohibited Illinois Bell from publishing, listing or disclosing any information concerning Brauer's residence address and residence telephone number associated with that address. The count further alleged that Donnelley and McDermott "substantially assisted or encouraged [Illinois Bell] to breach its duty of non-disclosure by furnishing [Illinois Bell] with [Brauer's] name" and obtaining from Illinois Bell Brauer's address. Injury was alleged to have occurred as a result of this conduct by the disclosure of Brauer's unlisted and unpublished telephone number into a "publicly accessible and open court file and disseminating same to various other persons such as *** the Sheriff's office." The trial court dismissed this count because of the absence of provable tortious conduct by Illinois Bell.

Brauer argues on appeal that his counterclaim sufficiently set forth a cause of action premised on section 876 of the Restatement (Second) of Torts. That section provides, in pertinent part:

"§ 876. Persons Acting in Concert

For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

(a) does a tortious act in concert with the other or pursuant to a common design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."

(Restatement (Second) of Torts § 876 (1979).)

This section of the Restatement (Second) of Torts becomes operative when "harm result[s] *** from the *tortious* conduct of another." (Restatement (Second) of Torts § 876 (1979).) See Restatement (Second) of Torts § 876, Comment *d*, at 317 (1979), which states:

"Advice or encouragement to act operates as a moral support to a *tortfeasor* and if the act encouraged is known to be *tortious* it has the same effect upon the liability of the adviser as participation or physical assistance. If the encouragement or assistance is a substantial factor in causing the *resulting tort*, the one giving it is himself a *tortfeasor* and is responsible for the consequences of the other's act. *** [The rule] likewise applies to a person who know-

ingly gives substantial aid to another who, as he knows, intends to do a *tortious act.*" (Emphasis added).

The cases relied upon by Brauer to support his "aiding and abetting counterclaim" recognize that the underlying primary conduct must be tortious. In *Sanke v. Bechina* (1991), 216 Ill. App. 3d 962, 576 N.E.2d 1212, for example, the primary conduct was negligence by the driver of a vehicle. The plaintiffs sought to impose liability upon a passenger in that car alleging that the passenger was a contributing tortfeasor whose own actions constituted a tort under section 876 of the Restatement (Second) of Torts. To avail themselves of that section of the Restatement, the plaintiffs alleged that the passenger aided and abetted the driver by, among other things, "knowingly and actively encourag[ing] [defendant driver's] wrongful and *tortious* conduct." (Emphasis added.) (216 Ill. App. 3d at 964, 576 N.E.2d at 1214.) Similarly, in *Halberstam v. Welch* (D.C. Cir. 1983), 705 F.2d 472, and *Payton v. Abbott Labs* (D. Mass. 1981), 512 F. Supp. 1031, cases also relied upon by Brauer, the primary wrongdoer's conduct was tortious (wrongful death and products liability respectively).

■ It is undisputed that Illinois Bell owed a duty of nondisclosure to Brauer and that Illinois Bell allegedly breached that duty. However, here, unlike in *Sanke, Halberstam,* and *Payton,* the conduct alleged to have occurred, Illinois Bell's breach of the private directory service agreement, is not tortious conduct but, rather, conduct of contractual breach.[1] (See *Morrow v. L.A. Goldschmidt Associates, Inc.* (1986), 112 Ill. 2d 87, 492 N.E.2d 181.) Brauer's alleged injury was that he did not receive the benefit of his bargain with Illinois Bell, nondisclosure of his unlisted residence address and residence telephone number.

■ Brauer attempts to salvage count VII of his counterclaims by appearing to argue, for the first time on appeal, that Illinois Bell committed tortious conduct by disclosing his residential address and telephone number in violation of the tariff regulating Illinois Bell and the private directory service. (The tariff provides immunity from liability for damages based upon prohibited disclosure of the customer's telephone number in the absence of willful misconduct.) Brauer contends that the tariff "expressly implied" a private right of

---

[1]In his original pleading, captioned "Answer, Affirmative Defenses and Counterclaims," Brauer included a counterclaim for breach of contract against Illinois Bell Telephone Company. Illinois Bell filed a motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure. (735 ILCS 5/2—615 (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 110, par. 2—615).) At oral arguments, Brauer indicated that the counterclaim against Illinois Bell was voluntarily dismissed without prejudice.

action for willful misconduct in the disclosure or publication of protected telephone numbers and that, therefore, the disclosure in the instant case, in violation of the tariff, was tortious conduct.

Initially, we note that count VII of Brauer's amended counterclaims did not premise liability on the existence of the tariff. Reference to the tariff was made in the allegations captioned "Factual Background" that preceded all of Brauer's counterclaims and only in the context of explaining the origin of the agreement between Illinois Bell and Brauer. Since a motion to dismiss should not be granted if a good cause of action is stated in the factual allegations of the pleading, even if that cause of action was not the one intended to be asserted and even if that cause of action is first asserted on appeal (*Illinois Graphics Co. v. Nickum* (1994), 159 Ill. 2d 469, 639 N.E.2d 1282), we choose to address Brauer's contentions.

A private cause of action is found to exist under a statute where: (1) the plaintiff falls within the class of persons sought to be protected; (2) the plaintiff's injury is one intended to be prevented; (3) the cause of action is consistent with the underlying purpose of the statute; and (4) the private cause of action is necessary to effectuate the purpose of the statute, *i.e.*, a civil remedy is needed. (*Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 432 N.E.2d 849; *Parra v. Tarasco, Inc.* (1992), 230 Ill. App. 3d 819, 595 N.E.2d 1186.) When a statute is promulgated to protect a particular class of individuals, but where the statute does not provide an express remedy, the courts may imply a private cause of action for violation thereof (*Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill. 2d 379, 432 N.E.2d 849) but must do so with caution (*Parra v. Tarasco*, 230 Ill. App. 3d 819, 595 N.E.2d 1186). The court must also look to see whether the remedies available are limited to those enumerated in the Act. (*Peel v. Yellow Cab Co.* (1986), 147 Ill. App. 3d 992, 498 N.E.2d 788.) While there is some question as to whether a private cause of action can be implied from an administrative regulation (see *Peel v. Yellow Cab Co.*, 147 Ill. App. 3d 992, 498 N.E.2d 788), we need not decide that issue since, even assuming a private cause of action can be implied from an administrative regulation, one cannot be implied from the regulation cited in the instant case.

As noted above, the regulation at issue here is a tariff adopted by the Illinois Commerce Commission. The tariff provides that private directory service telephone numbers as well as the customer's name and address are not to be published except in emergency situations and then only to law enforcement agencies or other emergency service providers. The tariff provides that "no liability for damages arising from publishing the telephone number *** shall attach to the

Company" unless there is willful misconduct and limits damages to the refund of monthly charges made by the company. A reading of the tariff leads to the conclusion that the entity sought to be protected by its damage provisions is not the private user but the telephone company. The apparent purpose of the damage provision was not to create new liability but to limit liability which might otherwise be incurred by force of the contract alone. Here there is no need for creation of a private right of action since the telephone company is already subject to a right of action under the laws of contract. Moreover, there is no such apparent intent since the underlying purpose of the tariff appears to narrow liability rather than to expand it. See *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill. 2d 379, 432 N.E.2d 849; *Parra v. Tarasco*, 230 Ill. App. 3d 819, 595 N.E.2d 1186 (creation of private cause of action must be consistent with underlying purpose of statute and must be necessary to effectuate that purpose).

Brauer's remedy against Donnelley and McDermott, based on their alleged encouragement to Illinois Bell to breach the private directory service agreement, would more correctly lie in a tort action for intentional interference with the contractual relations of others. While Brauer's complaint did not seek recovery on that tort theory, and while Brauer does not allege such a theory on appeal, if his complaint sets forth sufficient facts to support such a theory, a section 2—615 dismissal would be inappropriate. See *Illinois Graphics Co. v. Nickum* (1994), 159 Ill. 2d 469, 639 N.E.2d 1282 (theory first raised by appellate court during oral argument); *Great Atlantic & Pacific Tea Co. v. La Salle National Bank* (1979), 77 Ill. App. 3d 478, 395 N.E.2d 1193 (motion to dismiss should be denied if good cause of action is stated although not intended by plaintiff).

The elements for intentional interference with contractual rights include: existence of a valid and enforceable contract between the plaintiff and another; defendant's awareness of this contractual relation; defendant's intentional and unjustified inducement of a breach of the contract which causes a subsequent breach by the other; and damages. (*HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.* (1989), 131 Ill. 2d 145, 545 N.E.2d 672; *Continental Mobile Telephone Co. v. Chicago SMSA Ltd. Partnership* (1992), 225 Ill. App. 3d 317, 587 N.E.2d 1169; *Chapman v. Crown Glass Corp.* (1990), 197 Ill. App. 3d 995, 557 N.E.2d 256.) Contrary to McDermott's and Donnelley's assertions, allegations of malice are not required to adequately plead the tort of intentional interference with contractual relations. As stated in *HPI Health Care Services, Inc.*, "[t]he term 'malicious,' in the context of interference with contractual relations cases, simply means that the interference must have been intentional and without

justification" (*HPI Health Care Services, Inc.*, 131 Ill. 2d at 156-57, 545 N.E.2d at 677; *Roy v. Coyne* (1994), 259 Ill. App. 3d 269, 630 N.E.2d 1024); and justification is an affirmative defense which the defendant must plead and subsequently prove (*Roy*, 259 Ill. App. 3d at 279, 630 N.E.2d at 1031).

The interest protected in a tortious interference case is the reasonable expectation of economic advantage. (*O'Brien v. State Street Bank & Trust Co.* (1980), 82 Ill. App. 3d 83, 401 N.E.2d 1356.) Thus, the damages recoverable when a plaintiff proves intentional interference with contractual relations include pecuniary loss of the benefits of the contract; actual harm to reputation, if they are reasonably to be expected to result from the interference (*Draghetti v. Chmielewski* (1994), 416 Mass. 808, 626 N.E.2d 862); and consequential losses for which the interference is the legal cause. (*H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.* (2d Cir. 1989), 879 F.2d 1005; *National Right to Life Political Action Committee v. Friends of Bryan* (D. Nev. 1990), 741 F. Supp. 807; see generally Restatement (Second) of Torts § 774A (1979).) Punitive damages are recoverable where the plaintiff has specifically alleged " 'actual malice,' defined as 'a positive desire and intention to injure.' " See *Chapman v. Crown Glass Corp.* (1990), 197 Ill. App. 3d 995, 1012, 557 N.E.2d 256, 263; see generally Restatement (Second) of Torts § 774A, Comment *a*, at 55 (1979).

In the instant case, Brauer's amended counterclaim alleged the existence of a private directory service agreement between Illinois Bell and himself concerning the nondisclosure of his residence address and telephone number; that Donnelley and McDermott knew of the agreement; and that unknown agents or employees of Donnelley and McDermott "substantially assisted or encouraged" Illinois Bell to breach its duty of nondisclosure. A liberal reading of these allegations gives rise to the inference that Donnelley and McDermott acted to induce Illinois Bell to breach its service agreement with Brauer. Brauer's counterclaim is insufficient, however, due to its failure to allege any recoverable damages. In that respect, Brauer alleged that he "was harmed and injured by the public disclosure *** into a publicly accessible and open court file and disseminating same to various other persons such as, for example persons employed in the Sheriff's office." Brauer's prayer for relief included compensatory damages "for the harm done" and punitive damages in excess of $50,000 "to deter [McDermott] and Donnelley from similar misconduct in the future."

As a general rule, to constitute a valid cause of action in tort, there must be both injury and damages. Where a complaint fails to

allege any damage to the plaintiff that resulted from the alleged wrongful acts of the defendant (*Franks v. North Shore Farms, Inc.* (1969), 115 Ill. App. 2d 57, 253 N.E.2d 45) or where the damages alleged are based on conjecture and speculation, the action does not set forth recoverable damages and must be dismissed. (*Shehade v. Gerson* (1986), 148 Ill. App. 3d 1026, 500 N.E.2d 510; *Pawlowski v. Smorto* (1991), 403 Pa. Super. 71, 588 A.2d 36 (dismissal of intentional interference action).) In the case at bar, the allegations of harm were conclusory and the nature of the damages sought elusive and ubiquitous. There were no specific allegations of actual pecuniary or consequential losses that directly resulted from the inducement to breach the duty of nondisclosure. Nor do any such damages readily come to mind whether pleaded or not. Furthermore, Brauer's prayer for punitive damages is not supported by averments of actual malice. Thus, while Brauers' counterclaim more closely resembled an action for intentional interference with contractual relations under section 766 of the Restatement (Second) of Torts rather than an action for contributing to the commission of a tort under section 876 of the Restatement (Second) of Torts, the allegations in his counterclaim were insufficient under either theory; and the trial court properly dismissed count VII of Brauer's third amended counterclaims.

For the foregoing reasons, the order of the circuit court of Cook County dismissing counts VI and VII of defendant-counterplaintiff's third amended counterclaims is affirmed.

Affirmed.

COUSINS, P.J., and T. O'BRIEN, J., concur.