In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2823

Lonnie Kimbro,

Plaintiff-Appellant,

v.

Pepsico, Inc., et al.,

Defendants-Appellees.


Appeal from the United States District Court
for the Southern District of Illinois.
No. 97 C 935--Paul E. Riley, Judge.


Argued February 15, 2000--Decided June 2, 2000


 Before Posner, Chief Judge, and Easterbrook and Diane
P. Wood, Circuit Judges.

 Posner, Chief Judge.  Lonnie Kimbro sued his
former employer, Frito-Lay, for having violated
the federal age discrimination law by firing him,
allegedly on account of his being over 40. He
joined with this claim a supplemental claim under
state law against two of his supervisors at
Frito-Lay, plus Super Valu, Inc., doing business
under the name of Shop 'N Save, and a Shop 'N
Save store manager named Ansell, for tortious
interference with his employment contract with
Frito-Lay. (Other defendants have fallen by the
wayside.) The district court granted summary
judgment for the defendants.

 With regard to the age discrimination claim, the
judgment is unexceptionable; far from having
presented evidence of age discrimination, Kimbro
claims that his discharge was brought about by
the hostility of the store manager to him on
grounds unrelated to age, and this is virtually
an admission that his age was not a factor in
Frito-Lay's decision to fire him. More
interesting is the tort claim. The district judge
held it preempted by section 301 of the Taft-
Hartley Act, 29 U.S.C. sec. 185, which has been
construed to make federal law the exclusive
remedy not only for claims based on collective
bargaining contracts but also for claims that
cannot be adjudicated without interpreting such a

contract. E.g., United Steelworkers of America v. Rawson, 495 U.S. 362, 368-69 (1990); Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 407, 410 n. 10 (1988); Int'l Brotherhood of Electrical Workers v. Hechler, 481 U.S. 851, 857-89 (1987); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985). The judge thought this such a case. It may seem that an alternative mode of disposition, ordinarily preferable when as here the federal claim (the claim of age discrimination) drops out before trial, would have been to dismiss the tort claim without prejudice. 28 U.S.C. sec. 1367(c)(3); Groce v. Eli Lilly & Co., 193 F.3d 496, 501 (7th Cir. 1999); Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000). But a peculiarity of section 301, as it has been interpreted by the courts, is that any claim within its scope, even if denominated as a state law claim, is deemed to arise under, and only under, section 301, that is, under federal law. E.g., United Steelworkers of America v. Rawson, supra, 495 U.S. at 368-69; Caterpillar Inc. v. Williams, 482 U.S. 386, 392-94 (1987); Franchise Tax Board v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 1, 22-24 (1983); In re Amoco Petroleum Additives Co., 964 F.2d 706, 709 (7th Cir. 1992). So if the district judge was correct that section 301 occupies the field sought to be traversed by Kimbro's tort claim, the claim arose under federal law and federal jurisdiction was therefore secure even though the only explicit federal claim dropped out before trial.

Here are the facts, construed as favorably to the plaintiff as the record permits: Kimbro was a route sales merchandiser for Frito-Lay whose duties included servicing several retail stores including the Shop 'N Save store managed by Ansell. Ansell was furious at Frito-Lay for delay in shipping goods that he had ordered and took his fury out on Kimbro. For when he noticed Kimbro eating a cookie taken from a package in the store's receiving room, and discovered that Kimbro had not paid for the cookie, he reported to Frito-Lay that Kimbro had violated Super Valu's "no grazing" rule, even though the cookie was stale. Ansell told Kimbro's supervisors (the other defendants in the tortious-interference claim along with Super Valu and Ansell) not to let Kimbro service any Shop 'N Save stores. Frito-Lay then discharged him. Kimbro alleges that his supervisors effected his discharge in order to conceal their own incompetence in failing to keep Ansell's store supplied with Frito-Lay products, which had infuriated Ansell.

Kimbro's employment had been governed by a collective bargaining contract between Frito-Lay and a teamsters local, but the union did not

press his grievance that he had been fired without cause. He claims that Frito-Lay's employee handbook gave him a contractual right to progressive discipline that Frito-Lay violated by firing him for a first offense of being excluded from a customer's stores because of violating the customer's rule. Interference with that contractual entitlement is the tort that he says Ansell (and Ansell's employer, by virtue of the doctrine of respondeat superior) and Kimbro's two supervisors at Frito-Lay committed.

Assuming without having to decide that Kimbro has presented a prima facie case of tortious interference with contract under Illinois law, on which see Poulos v. Lutheran Social Services of Illinois, Inc., No. 1-98-3057, 2000 WL 306857, at *7 (Ill. App. Mar. 24, 2000); Strosberg v. Brauvin Realty Services, Inc., 691 N.E.2d 834, 845 (Ill. App. 1998); Reuben H. Donnelley Corp. v. Brauer, 655 N.E.2d 1162, 1172 (Ill. App. 1995), we consider whether such a claim is superseded by the exclusive federal jurisdiction created by section 301. The defendants argue that no claim of tortious interference may be maintained by an employee who is covered by a collective bargaining contract. But the only appellate cases they cite in support of this argument are ones in which the employee was trying to sue his employer, not a third party. When a worker is covered by a collective bargaining contract, he must (with immaterial exceptions, such as the discrimination claim that Kimbro also but fruitlessly presses here, e.g., Lingle v. Norge Division of Magic Chef, Inc., supra, 486 U.S. at 412-13; McKnight v. General Motors Corp., 908 F.2d 104, 112 (7th Cir. 1990); Tisdale v. United Ass'n of Journeymen & Apprentices, 25 F.3d 1308, 1311-12 (6th Cir. 1994)) litigate any legal dispute with his employer as a breach of that contract. He cannot sue for breach of contract under state law; nor may he recharacterize his claim as one of tort law in order to circumvent the exclusive jurisdiction of federal law over claims for breach of a collective bargaining contract. E.g., United Steelworkers of America v. Rawson, supra, 495 U.S. at 369, 371-72; Int'l Brotherhood of Electrical Workers v. Hechler, supra, 481 U.S. at 857-89; Smith v. Colgate-Palmolive Co., 943 F.2d 764, 768 (7th Cir. 1991).

One of the forbidden recharacterizations is recasting a breach of contract suit as a suit for tortious interference with contract. E.g., Lingle v. Norge Division of Magic Chef, Inc., 823 F.2d 1031, 1047, 1049 (7th Cir. 1987) (en banc), rev'd on other grounds, 486 U.S. 399 (1988); Beidleman v. Stroh Brewery Co., 182 F.3d 225, 234-35 (3d Cir. 1999); Oberkramer v. IBEW-NECA Service

Center, Inc., 151 F.3d 752, 756 (8th Cir. 1998); Turner v. American Federation of Teachers Local 1565, 138 F.3d 878, 884 (11th Cir. 1998); Int'l Ass'n of Machinists & Aerospace Workers v. Tennessee Valley Authority, 108 F.3d 658, 667 (6th Cir. 1997); Magerer v. John Sexton & Co., 912 F.2d 525, 530-31 (1st Cir. 1990); Scott v. Machinists Automotive Trades Dist. Lodge No. 190, 827 F.2d 589, 591-92 (9th Cir. 1987) (per curiam). There is some contrary authority in the Sixth and Eighth Circuits, see Meyer v. Schnucks Markets, Inc., 163 F.3d 1048, 1051 (8th Cir. 1998); Fox v. Parker Hannifin Corp., 914 F.2d 795, 800-01 (6th Cir. 1990); Dougherty v. Parsec, Inc., 872 F.2d 766 (6th Cir. 1989), though not a circuit split, since both circuits are on both sides of the issue. Only in the last-cited case, moreover, was the defendant not the plaintiff's employer; and it is not a tort for one party to a contract to interfere with the other party's contractual rights, as distinct from interference by a stranger to the contract. Knickman v. Midland Risk Services-Illinois, Inc., 700 N.E.2d 458, 461-62 (Ill. App. 1998); Douglas Theater Corp. v. Chicago Title & Trust Co., 681 N.E.2d 564, 567 (Ill. App. 1997); Fox v. Parker Hannifin Corp., supra, 914 F.2d at 800.

But here we do have interference by a third party, and this can, one might think, make a big difference. Suppose that Kimbro hadn't stolen the cookie and that Ansell, acting from entirely private motives (such as a romantic interest in Kimbro's wife), had framed Kimbro for the theft, fooling the union and Frito-Lay and thus (in an up-to-date version of the story of David, Uriah, and Bathsheba) dooming Kimbro. It seems odd to think that a suit against Ansell would be barred by the Taft-Hartley Act. The employer would not be involved in the suit, and the terms of the collective bargaining contract--even the fact that there was such a contract--would be irrelevant. Successful invocation of section 301 in such a case would thus leave the plaintiff remediless, Brazinski v. Amoco Petroleum Additives Co., 6 F.3d 1176, 1179-80 (7th Cir. 1993); Int'l Union, United Mine Workers of America v. Covenant Coal Corp., 977 F.2d 895, 897-900 (4th Cir. 1992); Jackson v. Kimel, 992 F.2d 1318, 1328 n. 1 (4th Cir. 1993) (concurring opinion); see also Loss v. Blankenship, 673 F.2d 942, 946 (7th Cir. 1982); United Food & Commercial Workers Union v. Quality Plus Stores, Inc., 961 F.2d 904 (10th Cir. 1992), without advancing any federal labor policy that we can think of. It is true that a number of decisions bar on section 301 grounds tortious interference suits against third parties, DeCoe v. General Motors Corp., 32 F.3d 212 (6th Cir. 1994); Int'l Union, United Mine Workers of America v. Covenant

Coal Corp., supra, 977 F.2d at 899-900; Milne Employees Ass'n v. Sun Carriers, Inc., 960 F.2d 1401, 1411-12 (9th Cir. 1991); Johnson v. Anheuser Busch, Inc., 876 F.2d 620, 624 (8th Cir. 1989), see also Baylis v. Marriott Corp., 906 F.2d 874, 877 (2d Cir. 1990) (Railway Labor Act), but they are cases in which the suit, even though against a third party, might have required the court to interpret the collective bargaining agreement (the contract allegedly interfered with), in derogation of the arbitration procedures that most such agreements establish for interpreting the agreement. That concern, we have suggested without deciding, might be accommodated by referring any interpretive issues to arbitration, with the suit to abide the arbitration, see Brazinski v. Amoco Petroleum Additives Co., supra, 6 F.3d at 1179-81; the analogy is to the doctrine of primary jurisdiction in administrative law.

A few cases fill the remedial gap by holding that section 301 creates a tort right against interference with a collective bargaining contract, e.g., Antol v. Esposto, 100 F.3d 1111, 1117 (3d Cir. 1996); Xaros v. U.S. Fidelity & Guaranty Co., 820 F.2d 1176 (11th Cir. 1987); Painting & Decorating Contractors Ass'n of Sacramento, Inc. v. Painters & Decorators Joint Comm. of East Bay Counties, Inc., 707 F.2d 1067, 1070-72 (9th Cir. 1983), but that can't be right, as section 301 creates a right of action only for breach of a collective bargaining agreement; it is not a tort statute. The suggestion in Brazinski, in contrast, places no strain on the statutory language, although it leaves unresolved how the interpretation of the agreement by the arbitrators is to be evoked, and with what binding effect, in a case such as this in which none of the defendants is a party to the agreement.

It will not be necessary to pursue these questions further in order to decide this case. Consider first the joinder as defendants of Kimbro's two supervisors at Frito-Lay. It is a transparent effort to get around the exclusive federal-law jurisdiction created by section 301. The difference between suing your employer for breach of contract and calling it tortious interference, and suing your supervisors for tortious interference, is one of form rather than of substance. For if supervisors are exposed to such liability the employer will have either to pay them higher wages to compensate them for the risk of being sued, or to agree to indemnify them for the costs of such a suit. In either case the burden of the liability will come to rest on the employer, making it the de facto defendant in a de facto suit under state law for breach of a

collective bargaining contract. And this section 301 does not permit. E.g., Baker v. Farmers Electric Co-Op., Inc., 34 F.3d 274, 283-84 (5th Cir. 1994); Hillard v. Dobelman, 774 F.2d 886, 887 (8th Cir. 1985) (per curiam).

The question whether the suit can be maintained against Ansell and his employer is more difficult, but the answer is ultimately the same. It was inevitable that the collective bargaining contract between Frito-Lay and Kimbro's union would be brought into this suit had it been allowed to proceed to trial. The reason is that the trier of fact would have had to decide whether Kimbro had a contractual right not to be fired for "grazing" (more precisely, for being banished permanently from a customer's premises because of grazing), an issue that depends on whether grazing is good cause for termination, within the meaning of the contract. The jurisdiction conferred by section 301 is, as we have said, exclusive not only against state-law suits based on such contracts but also against state-law suits to which the interpretation of such a contract is germane. It is true that in a case in which the defendant is not a party to the contract, the extinction of state causes of action is questionable because it could leave the plaintiff remediless. We have suggested that a possible way to preserve those causes of action in such a case might be somehow to refer any issues of contract interpretation to the arbitrators, the suit to abide their decision. But the plaintiff has not picked up on this suggestion in our Brazinski decision, and it is therefore waived.

Affirmed.