**Tim ALMAND and Doris Almand**

v.

**BENTON COUNTY, ARKANSAS; Andy Lee, Individually and as Sheriff of Benton County, T. Ray Oats, Individually and as Deputy Sheriff of Benton County, and Arthur Faulkenbury, Individually and as a Deputy Sheriff of Benton County, Arkansas, Federal Savings Bank of Rogers, Arkansas and Douglas Schrantz, Individually and as Agent for Federal Savings Bank of Rogers, Arkansas, Defendants.**

Civ. No. 91–5016.

United States District Court, W.D. Arkansas, Fayetteville Division.

June 1, 1992.

Priscilla Pope, John Arens, Arens Law Firm, Fayetteville, Ark., for plaintiffs.

Michael Rainwater, Skokos, Coleman & Rainwater, Little Rock, Ark., for County defendants.

Walter Cox, Davis, Cox & Wright, Fayetteville, Ark., for Douglas Schrantz.

G. Alan Wooten, Warner & Smith, Fort Smith, Ark., for Federal Sav. Bank.

## MEMORANDUM OPINION

### H. FRANKLIN WATERS, Chief Judge.

#### I. *Statement of the Case*

The plaintiffs, Tim and Doris Almand, brought this civil rights action under section 1983 against the defendants. In addition to their civil rights claims, the plaintiffs asserted various state law claims. Both factually and legally this case has been complex. After a number of continuances for various reasons and a mistrial, this matter came to trial on April 27, 1992, to May 4, 1992. The trial testimony lasted five full days and cannot be easily summarized. We will not attempt to convey in any detail the trial testimony but rather will only give a brief overview of the events at issue.

On August 8, 1988, First Federal Savings Bank of Rogers, Arkansas (now Federal Savings Bank of Rogers, Arkansas) filed suit in the Benton County Circuit Court against Tim Almand (hereinafter Almand) seeking an order of delivery on certain dairy cattle and equipment on which the bank had a security interest. On August 18, 1988, Almand answered First Federal's (hereinafter bank) complaint and asserted as an affirmative defense the Chapter 11 bankruptcy. At trial the testimony indicated that the answer had not been served on the bank's attorney and that a copy did not appear in the judge's file. However, a file marked copy of the answer was in the file maintained by the clerk of the court.

On August 22, 1988, Almand filed a Chapter 11 bankruptcy petition. Pursuant to 11 U.S.C. § 362 the automatic stay became effective upon the filing of the bankruptcy petition. On August 30, 1988, an order of delivery was issued by Circuit Judge William Enfield. The order directed the sheriff of Benton County to execute the order by assisting the bank in taking possession of the items subject to the security interest within twenty days from the date of the order.

The order of delivery was not executed on at this time and various proceedings were conducted in bankruptcy court. On May 22, 1989, the bankruptcy court entered an order confirming the debtor's chapter 11 bankruptcy plan. It was later determined that this confirmation was in error as the plan did not reflect certain court ordered modifications. Subsequently, the bank filed a motion to dismiss the bankruptcy case because of the debtor's alleged failure to comply with the terms of the plan. On January 23, 1990, the bankruptcy court orally dismissed the bankruptcy case. On February 20, 1990, an order was entered in the bankruptcy case that dismissed the bank's motion to dismiss and did not dismiss the bankruptcy case.

In the interim, the bank executed on the order of delivery with the assistance of the Benton County sheriff's office on February 15, 1990. The order was served on Almand by deputy sheriffs T. Ray Oates and Arthur Faulkenbury accompanied by agents and employees of the bank. The trial testimony indicated that prior to executing on the order both Schrantz, the bank's attorney, and Oates, a Benton County deputy sheriff, had sought the advice of the circuit judge's office in an attempt to determine whether it was appropriate to execute on the order. Circuit Judge Sidney McCollum or members of his staff indicated that once a bankruptcy stay was lifted or a bankruptcy case was dismissed the circuit court again had jurisdiction over any matter that had been pending in it at the time of the bankruptcy filing. This information was given in response to general questions asked by Schrantz and/or Oates. According to the testimony of Judge McCollum, neither apprised the Judge or his staff of the specifics regarding the Almand case.

During the execution of the order Almand was in touch with his attorney, the court, and the sheriff's office, and advised the parties executing the order that he was in bankruptcy and that the execution was improper. Later that day, February 15, 1990, Circuit Judge Sidney McCollum had a hearing in his chambers and being apprised of the facts ruled that the order of delivery

was void. A handwritten entry was made on the court's docket to that effect.

Upon being advised of this order the execution process was stopped. However, the equipment and cattle that had already been loaded and/or transported were not returned to the Almands. In fact, the equipment and cattle were not returned until October 1, 1991.

During the execution process deputy sheriff Oates with the assistance of Richard Twist, an employee of the bank, had placed Almand under arrest, handcuffed him, and placed him in the patrol car. Later Almand was allowed to remain in the house as long as he did not interfere in any way with the execution process.

At the conclusion of the evidence the following constitutional claims were submitted to the jury: Mr. Almand's claim that he was arrested or otherwise detained without probable cause; Mr. Almand's claim that he was subjected to excessive force during the course of his arrest or detention; and the Almands' claim that they were deprived of their property without the due process of the law. The following state law claims were also submitted to the jury: conversion; trespass; assault; battery; false imprisonment; malicious prosecution; and abuse process. After due deliberation, the jury on May 4, 1992, in answers to interrogatories rendered the following verdicts: no liability with respect to Mr. Almand's claim that he was arrested or otherwise detained without probable cause; no liability with respect to Mr. Almand's claim that he was subjected to excessive force during his arrest or detention; liability with respect to Schrantz and Federal Savings Bank on the Almands claim that they were deprived of their property without the due process of the law; all defendants were found liable on Mr. Almand's conversion claim; T. Ray Oates and Federal Savings Bank were found liable on the Almands' trespass claim; no liability on Mr. Almand's assault claim; no liability on Mr. Almand's battery claim; no liability on Mr. Almand's false imprisonment claim; no liability on the malicious prosecution claim; liability with respect to Schrantz and Fed-

eral Savings Bank on the abuse of process claim.

In accordance with the jury's verdicts judgment was entered on May 5, 1992, in the following amounts: judgment against Schrantz in the total amount of $41,602.64; judgment against Federal Savings Bank in the total amount of $19,970.82; judgment against T. Ray Oates in the amount of $809.80; judgment against Arthur Faulkenbury in the amount of $684.80; and judgment against Andy Lee/Benton County in the amount of $684.80.

The court has now received three motions for judgment as a matter of law filed on behalf of Douglas Schrantz, Federal Savings Bank, and the Benton County defendants. The arguments raised in these motions will be addressed below.

II. *Applicable Standard for Judgments as a Matter of Law*

■ Because of changes in the terminology used in Rule 50, what were formerly motions for judgment notwithstanding the verdict are now motions for judgment as a matter of law. Fed.R.Civ.P. 50. Although the terminology is different, the standard remains the same.

The Court of Appeals for the Eighth Circuit has said in *Jeanes v. Milner*, 428 F.2d 598 (8th Cir.1970), that motions for judgment notwithstanding the verdict should be sparingly granted because to do so deprives the parties of their right to a jury trial. The test which this court must follow in ruling on motions for judgment notwithstanding the verdict is well stated in 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2524 (1971) as follows:

The question is not whether there is literally no evidence supporting the party against whom the motion is directed, but whether there is evidence upon which the jury could properly find a verdict for that party. In determining whether the evidence is sufficient, the court is not free to weigh the evidence or to pass on the credibility of witnesses or to substitute its judgment of the facts for that of the jury. Instead, it must view the evidence most favorably to the party against

whom the motion is made and give that party the benefit of all reasonable inferences from the evidence.

*Id.* (citations and footnotes omitted).

Recently the Court of Appeals for the Eighth Circuit described the applicable standard as follows:

> In a motion for j.n.o.v., the question is a legal one, whether there is sufficient evidence to support a jury verdict. This court must analyze the evidence in the light most favorable to the prevailing party and must not engage in weighing or evaluation of the evidence or consider questions of credibility. We have also stated that to sustain a motion for j.n.o.v., all the evidence must point one way and be susceptible of no reasonable inference sustaining the position of the nonmoving party.

*White v. Pence,* 961 F.2d 776, 779 (8th Cir.1992) (citations omitted).

### III. *Discussion*

 At the conclusion of the plaintiffs' case, Schrantz and the Bank argued for the first time that as private actors they cannot be held liable for constitutional violations under section 1983 because they did not act under color of state law. Under section 1983, a plaintiff must prove that the conduct complained of was committed by a person acting under color of state law and that the conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Under appropriate circumstances, a private individual may be said to be acting under color of state law. In analyzing a claim against a private actor the focus of the court's inquiry is whether the alleged deprivation of constitutional rights was committed under color of state law.

██ In *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), the Supreme Court set forth a two part test for determining when a party's actions are attributable to the state for purposes of section 1983. The Court stated the two part test as follows:

> First, the deprivation must be caused by the exercise of some right or privilege created by the state, or by a rule of conduct imposed by the state, or by a person for whom the state is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor because he is a state official, or because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state.

*Id.* at 937, 102 S.Ct. at 2753. Thus, the *Lugar* fair attribution test requires the existence of a state policy and a state actor. *Roudybush v. Zabel,* 813 F.2d 173, 176 (8th Cir.1987). "The issue thus hinges on whether the defendant's 'conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State.'" *Id.* at 176 (quoting *Lugar,* 457 U.S. at 937, 102 S.Ct. at 2753). The *Lugar* court also indicated that it did not intend to abolish the *Monroe v. Pape* abuse of authority doctrine. *Monroe v. Pape,* 365 U.S. 167, 184–187, 81 S.Ct. 473, 482–484, 5 L.Ed.2d 492 (1961). "In fact, the Court cited *Monroe v. Pape* as an example of when the two prongs of *Lugar* (state causation and state actor) collapse into one. Thus, even if a private party misuses a state statute, the deprivation can still be under color of state law if the authority of state officials puts the weight of the State behind the private decision." *Greco v. Guss,* 775 F.2d 161, 167 (7th Cir.1985).

As the Supreme Court has noted the principle of state action is "easily stated" while "the question of whether particular discriminatory conduct is private, on the one hand, or amounts to 'state action,' on the other, frequently admits of no easy answer." *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 172, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1972). In *Lugar,* the plaintiff alleged that private party debt claimants in a state court action, in violation of due process, had maliciously used state prejudgment attachment procedures which resulted in wrongful seizure of his property under a levy later set aside. The *Lugar*

court ruled that, in a due process challenge to state attachment procedures, "invoking the aid of state officials to take advantage of state created attachment procedures ... is sufficient when the state has created a system whereby state officials will attach property on the ex parte application of one party to a private dispute." *Lugar*, 457 U.S. at 942, 102 S.Ct. at 2756.

In *Hassett v. Lemay Bank & Trust Co.*, 851 F.2d 1127 (8th Cir.1988), the Court of Appeals for the Eighth Circuit discussed the *Lugar* test and applied it in the context of a private actor's utilization of state replevin procedures to recover possession of used equipment. The secured party obtained an order of delivery and the sheriff aided in obtaining possession of the equipment. The plaintiffs sued the bank, the sheriff, and the bank officer involved. Plaintiffs alleged fraudulent procurement of the order of replevin and asserted that the replevin statute as applied was unconstitutional. The court stated that the allegations revealed only private misuse of the state's procedures. *Id.* at 1130. The court noted that "private misuse of a statute by a private actor is not sufficient to state a claim under section 1983." *Id.* at 1129.

In *Roudybush v. Zabel*, 813 F.2d 173 (8th Cir.1987), the Eighth Circuit in discussing *Lugar* noted that "the Lugar Court made clear that a private party's unlawful use of a constitutional state procedural statute does not, by itself, satisfy the state policy component." *Id.* at 177. In summarizing its ruling the court noted:

> Accordingly, this court has held, as we do here, that *Lugar's* state policy component is not met when the private party charged with an unconstitutional deprivation has allegedly acted unlawfully with respect to a constitutional state statute. Likewise, we have consistently found that *Lugar's* state policy component is met when the party charged with an unconstitutional deprivation has acted in conformity with an allegedly unconstitutional state statute or well-settled custom.

*Id.* (citations omitted).

■ Alternatively, a private actor may be liable under section 1983 if a plaintiff can establish a conspiracy or joint participation between the private actor and a state official to deprive the plaintiff of constitutional rights. *Id. See also Lugar*, 457 U.S. at 931, 102 S.Ct. at 2750; *Myers v. Morris*, 810 F.2d 1437, 1454 (8th Cir.1987), *cert. denied* 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). The conspiracy or joint participation satisfies the "under color of state law" requirement. It has been noted that as the police involvement becomes more important, repossession by the private individual assumes the character of state action. *Greco v. Guss*, 775 F.2d 161, 167 (7th Cir.1985).

■ In this instance we have two private actors, Schrantz and the bank. Here the bank obtained an order of delivery and execution thereon through the use of a state procedural mechanism. If it were mere misuse of the state procedures as discussed by the Court of Appeals for the Eighth Circuit in *Roudybush* and *Hassett*, the court would be forced to conclude that the private actors did not act under color of state law. However, it is not the mere misuse of the replevin statute itself but rather its application in the case of an intervening bankruptcy petition that is challenged by the plaintiffs. Additionally, plaintiffs not only challenge the use of the statute given the intervening bankruptcy but also the continued execution of the order of delivery despite notice to all the defendants that a bankruptcy stay was in effect. The defendants made the decision to execute on the order and to continue such execution after having been given notice of the bankruptcy.

Thus, plaintiffs are challenging the actions taken not because the actions violate the provisions of the replevin statute but because the actions violated their rights created by federal law under the Bankruptcy Code. The trial testimony indicated a significant level of involvement between the private actors and state actors in the execution of the order of delivery. This case involves more than mere passive observation of state officials while a private creditor repossessed equipment. The joint

participation in the seizure of the property is sufficient to establish joint participation between the private and state actors. *See e.g., Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir.1989), *cert. denied* 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990); *Buller v. Buechler*, 706 F.2d 844 (8th Cir. 1983).

Schrantz actively sought the execution of this order and coordinated efforts to aid in the repossession. The Benton County defendants met with bank agents prior to the execution of the order, served the order of delivery, orally represented that the order was valid and gave the bank the right to take the equipment, restrained Almand even up to the point of arresting him, and allowed the execution to take place over the Almands protestations and those of the Almands' attorney that the order was void because of a bankruptcy stay. In fact, the testimony indicated that the execution continued even after Judge McCollum has ruled the order of delivery void. Both Schrantz and bank agents were involved with the restraint of Almand. Under the particular circumstances of this case, we believe the private parties acted under color of state law.

■■■■ Both Schrantz and the bank argue that there was insufficient evidence to support a finding of abuse of process. At trial, the jury was instructed as follows on the abuse of process claim:

> The Almands claim damages from Mr. Schrantz and the Federal Savings Bank of Rogers for abuse of process and have the burden of proving each of the following essential elements:
>
> One, that the defendants in using legal process acted for an ulterior purpose;
>
> Two, that the defendants committed a wilful act in the use of the process not proper in the regular conduct of the proceeding; and
>
> Three, that the defendants' actions proximately caused damage to the plaintiffs.
>
> Negligence or carelessness on the part of the defendant is not sufficient, alone, to sustain plaintiffs claim. Instead, plaintiffs must show by a preponderance

of the evidence that the defendants' motives were improper and willfully taken to obtain an impermissible advantage or other improper benefit.

Court's Instruction number 42. *Peterson v. Worthen Bank & Trust Co.*, 296 Ark. 201, 753 S.W.2d 278 (1988); *Smith v. Nelson*, 255 Ark. 641, 501 S.W.2d 769 (1973); *Lewis v. Burdine*, 240 Ark. 821, 402 S.W.2d 398 (1966); Prosser and Keeton, *The Law of Torts* § 121 at 898 (5th Ed. 1984).

Schrantz and the bank do not argue that the instruction is improper; rather, they argue that there is no evidence of wilful conduct sufficient to support the award. Schrantz points out that his act of consulting with the Benton County Circuit Judge to determine if he could use the old order belies any intent on his part to do an unlawful act. The bank argues that it had the right to institute the replevin proceeding and states that it honored the bankruptcy stay until it was told by its attorney that it was no longer necessary for it to do so. We are told "[a]ll that was ever done was a replevin of certain property pursuant to what at the time appeared to be a valid Court Order and the advice of counsel. There is no proof that the process in this case was perverted to accomplish an ulterior purpose or tainted by any willful act on the part of the Defendant, Bank."

In opposition, plaintiffs argue that the testimony of "John Blair, Linda Dover and Sidney McCollum, and the inferences that can reasonably be drawn therefrom establish that defendant Schrantz wilfully mislead (sic) both Mrs. Dover and Judge McCollum with regard to the sequence of the filing of the Almand bankruptcy and the issuance of the Order of Delivery." Specifically, plaintiffs refer to the fact Schrantz did not inform the judge and his staff that the bankruptcy petition had been filed prior to the issuance of the order of delivery.

The court believed at the close of all the evidence in this case and believes now that there was sufficient evidence from which the jury could find an abuse of process had taken place. The order of delivery was

obtained in an ex parte proceeding and was issued after Almand filed bankruptcy. The order recited that it was to be executed within 20 days. Mr. Twist, a bank officer, indicated the bank had some doubts concerning the validity of the order. Despite these doubts the bank proceeded with the execution. When an inquiry was made into the validity of the order the judge and the judge's staff were not apprised of all the relevant facts. Although there was contradictory evidence in regard to what transpired prior to the order of delivery being executed on, the evidence adduced by plaintiffs if believed by the jury was sufficient to support an award. Certainly, reasonable minds could differ and the court will not substitute its own judgment for that of the jury.

Schrantz and the bank also argue that in the absence of willful or intentional conduct the proof does not support the finding necessary for an award of punitive damages. The same reasons for denying the motion with regard to the abuse of process claim apply to the submission of the punitive damage issue to the jury. In this case the court submitted various intentional tort claims to the jury. The court believes the evidence warranted submission of these claims and that the same evidence, if believed by the jury, warranted submission of a punitive damage issue to the jury.

■ Next, Schrantz and the bank ask that the award of compensatory damages be set aside because of tainted evidence. At trial, Mr. Arens in a leading question solicited testimony from Almand regarding the valuation of his cattle. An objection was made and sustained to the leading question. The question was then rephrased and Almand gave the answer suggested by the leading question. The court admonished counsel regarding this leading question.

While the court believes the question was improper, it does not believe the evidence "tainted" the entire trial. Nor can the court say that it "tainted" the jury verdict. Ample evidence regarding plaintiffs' alleged damages was before the jury. The evidence was before the jury both as testimony and in the form of exhibits. All the testimony on this issue did not come into the trial through Almand. The court cannot say that the evidence adduced by means of the leading question formed the basis of the jury award. If that had been the only damage evidence before the jury, the court might find differently. However, it was not and the court cannot say that the jury verdict was a product of this one statement.

■ Finally, Schrantz argues that he is statutorily immune from civil actions for damages under the provision of Ark.Code Ann. § 16–22–310 (Supp.1991). This statute was enacted in 1987 and provides:

(a) No person licensed to practice law in Arkansas and no partnership or corporation of Arkansas licensed attorneys or any of its employees, partners, members, officers, or shareholders shall be liable to persons not in privity of contract with the person, partnership, or corporation for civil damages resulting from acts, omissions, decisions, or other conduct in connection with professional services performed by the person, partnership, or corporation, except for:

(1) Acts, omissions, decisions, or conduct that constitutes fraud or intentional misrepresentations; or

(2) Other acts, omissions, decisions, or conduct if the person, partnership, or corporation was aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action. For the purposes of this subdivision, if the person, partnership, or corporation:

(A) Identifies in writing to the client those persons who are intended to rely on the services, and

(B) Sends a copy of the writing or similar statement to those persons identified in the writing or statement, then the person, partnership, or corporation, or any of its employees, partners, members, officers, or shareholders may be held liable only to the persons intended to so rely, in addition to those persons in privity of contract with the person, partnership, or corporation.

# 617

(b) This section shall apply only to acts, omissions, decisions, or other conduct in connection with professional services occurring or rendered on or after April 6, 1987.

Ark.Code Ann. § 16–22–310 (Supp.1991).

Schrantz points out that the Almands are third parties not represented by or in privity with him. Therefore, Schrantz argues that the plain language of this section provides immunity at least on the state claims, if not the civil rights claims. It is argued that the legislative intent behind this statute is to immunize attorneys from claims by third parties.

Although this statute was enacted in 1987, the parties have not located nor has the court's own research revealed any reported cases discussing this provision. Plaintiffs argue that even if Schrantz's supposition of legislative intent is correct the statute does not apply because of the proof of intentional misrepresentations made by Schrantz to both Judge McCollum regarding the timing of the bankruptcy and to the sheriff's department regarding the nature of his inquiry with Judge McCollum.

██ An attorney's liability to third parties for actions taken during the course of providing professional services to a client has been the subject of much litigation. As a general rule, an attorney is not liable to persons not in privity with him for negligence in the performance of his duties. Rather, the attorney is held liable only for conduct constituting fraud, intentional misrepresentations, or intentional torts. *See e.g., National Savings Bank v. Ward,* 100 U.S. (10 Otto) 195, 25 L.Ed. 621 (1879); *Robertson v. White,* 633 F.Supp. 954, 970 (W.D.Ark.1986); *Norwood v. Heaslett,* 218 Ark. 286, 289, 235 S.W.2d 955 (1951). A limited exception to the strict privity rule is commonly made when the third party is found to be a third party beneficiary.

The rule of strict contractual privity has been relaxed in many areas of the law. Some courts have noted that the erosion of the contractual privity requirement has also made inroads in the area of attorney liability to nonclients. *See e.g., Flaherty v. Weinberg,* 303 Md. 116, 492 A.2d 618

(1985). *See also* Restatement (Second) of Torts § 522 (1977); Annotation, *Attorney's liability, to one other than immediate client, for negligence in connection with legal duties,* 61 A.L.R.4th 616 (1988).

Having reviewed the law in general and the language of the Arkansas statute we conclude that the statute was not meant to extend immunity from civil damages to intentional acts such as abuse of process or conversion. The statutory language appears to be nothing more than a restatement of the general rule of liability. Although the statute uses the terms fraud or intentional misrepresentation when discussing exceptions to the privity requirement, we believe the exception includes intentional torts that are committed on third parties. The court does not believe the statute was intended to make attorneys immune from liability for damages in the case of an intentional tort; rather the statute appears to be a legislative statement that the privity requirement still exists in Arkansas in connection with contract or negligence actions. This may very well have been a legislative response to the erosion of the privity requirement in other aspects of the law as well as its erosion in connection with attorney liability to third parties. In another context an Arkansas immunity statute has been held not to apply to intentional torts. Municipal immunity from tort liability has also been statutorily enacted in Arkansas. Ark.Code Ann. § 21–9–301 (1987). That statute provides in pertinent part that "[n]o tort action shall lie against any such political subdivision because of the acts of their agents and employees." This immunity does not apply to intentional torts. *Battle v. Harris,* 298 Ark. 241, 766 S.W.2d 431 (1989).

In this case the jury found Schrantz liable for an abuse of process and conversion. The abuse of process and conversion claims concerned an order of delivery and its execution. This order of delivery was intended to and did interfere with the property rights of the plaintiffs. The effect was direct and immediate and not fortuitous or incidental. It is the type of fortuitous or incidental damage to third parties that the

statute attempts to prohibit. Perhaps more relevant to our inquiry here is the fact that the jury in rendering its verdict on the abuse of process claim was required to find that Schrantz's motives were improper and willfully taken to obtain an impermissible advantage or other improper benefit. To hold that Schrantz is immune from liability for abuse of process would require us to interpret the statute as a shield behind which an attorney may take action to intentionally and improperly deprive someone of his property. The same reasoning applies to the conversion claim.

■■■■ The court reads the statute to exempt from its privity requirement actions involving fraud, collusion, malicious, or tortious acts. Such a holding does not inject an impermissible consideration into the relationship of an attorney and his client. The statute protects the attorney from claims based on contract or negligence or conduct not constituting an intentional tort under Arkansas law. The court does not believe that the immunity statute applies to the federal civil rights claims.

■■ The Benton County defendants have also moved for judgment as a matter of law. Basically, the defendants argue that the jury verdicts were illogical. It is pointed out that the jury found the defendants did not violate plaintiffs' constitutional rights yet found the defendants did commit conversion and trespass. Defendants argue that if the section 1983 essential elements were not found to have been proven, the conversion and trespass essential elements have not been proven either. In regard to the trespass claim, we are told that Deputy Oates' presence was authorized by law and that as a matter of law he did not commit the intentional tort of trespass. In regard to conversion, defendants assert that there is no proof whatsoever that the county defendants exercised dominion over the property of the plaintiffs.

These arguments must fail for various reasons. First, the elements of the civil rights claims and the state law claims are not identical. Second, these arguments ignore the defense of quasi-judicial immunity which was asserted by the county defen-

dants with respect to the constitutional law claims. As plaintiffs point out, the jury could have found that no civil rights violation was committed by the county defendants because of the application of the quasi-judicial immunity defense to the civil rights claims. This defense was not applicable to the state law claims. Third, because of the defense of quasi-judicial immunity the jury could have found, and apparently did find, that the county defendants did not have the lawful authority to be on the property or to assist the private defendants in the repossession of the equipment.

For the above reasons, the motions for judgment as a matter of law filed on behalf of the defendants are denied. A separate order in accordance herewith will be concurrently entered.

IT IS SO ORDERED.