2010 Ark. 292

William G. BORN, Sr., Barbara Johnson, Billy W. Nabours, Cindy Miller, and Nathan Scoggins, each Individually and on Behalf of Other Similarly Situated Citizens of Arkansas, Appellants

v.

HOSTO & BUCHAN, PLLC, Appellee.

No. 09–971.

Supreme Court of Arkansas.

June 17, 2010.

326

Sanford Law Firm, PLLC, by: Josh Sanford, Russellville, for appellants.

Wright, Lindsey & Jennings, by: Kimberly Wood Tucker and Bettina Brownstein, Little Rock, Chester Harris Lauck III, Little Rock, for appellees.

ROBERT L. BROWN, Justice.

The appellants in this case are people who had lawsuits filed against them in an effort to recover debts allegedly owed by them to certain creditors. These underlying lawsuits were brought by the appellee, Hosto & Buchan, PLLC ("H&B"), a law firm, on behalf of various clients. According to the appellants, H&B filed suit against appellant William G. Born on October 3, 2008, on behalf of Atlantic Credit & Finance 8 ("Atlantic Credit"); appellant Barbara Johnson in March 2007 on behalf of First Community and Collecting Bank, N.A. ("First Community"); appellant Billy W. Nabours on October 31, 2007, on behalf of Capital One Bank ("Capital One"); appellant Cindy Miller on October 8, 2008, on behalf of Atlantic Credit; and appellant Nathan Scoggins on March 5, 2009, on behalf of Capital One. The appellants will be referred to throughout the opinion as the Born debtors.

On April 13, 2009, the Born debtors filed a Second Amended and Substituted Complaint ("the complaint") against H&B. In the complaint, they sought to bring a class action against H&B for eight causes of action: (1) violations of the Fair Debt Collection Practices Act ("FDCPA"), codified at 15 U.S.C. § 1962, et seq.; (2) abuse of process; (3) violations of the Arkansas Deceptive Trade Practices Act ("ADTPA"), codified at Ark.Code Ann. § 4–88–101 et seq.; (4) civil conspiracy; (5) fraud and misrepresentation; (6) constructive fraud; (7) negligence; and (8) defamation.[1]

On May 4, 2009, H&B moved to dismiss the complaint under Arkansas Rule of Civil Procedure 12(b)(6) and filed an answer as well. In its motion, H&B claimed that the complaint should be dismissed without prejudice on multiple grounds. H&B urged, as its overarching defense, that it was immune from suit under Arkansas Code Annotated section 16–22–310, which provides that attorneys "shall not be liable to persons not in privity of contract . . . for civil damages resulting from acts, omissions, decisions, or other conduct in connection with professional services performed by the person, partnership, or corporation. . . ." According to H&B, all claims other than actual fraud or intentional torts, which are expressly exempted from section 16–22–310, and claims under

---

1. The complaint stated it was bringing claims on behalf of the Born debtors and "on behalf of all other similarly situated citizens of Arkansas." While the parties addressed the merits of this lawsuit as a class action in their pleadings before the circuit judge, the Born debtors did not move for class certification, the judge did not rule on the matter, and the parties do not argue the point on appeal. Thus, at this stage, the only issue on appeal is whether the circuit judge erred in granting H&B's motion to dismiss the complaint based on Arkansas Rule of Civil Procedure 12(b)(6).

the FDCPA were barred by the attorney-immunity statute.

H&B's motion to dismiss also maintained that res judicata and Arkansas Rule of Civil Procedure 12(b)(8) barred the claims because the issues raised by the Born debtors could have, and should have, been raised in the underlying complaints. H&B further urged that the Born debtors' argument that H&B was required to be licensed by the state board of collection agencies was incorrect, even though it conceded that it was deemed a debt collector under the FDCPA. As a final point, H&B asserted that appellant Born did not have standing to bring suit against it because he was not the proper defendant, by his own assertion, in the underlying complaint.

The motion to dismiss made many additional arguments with respect to the specific causes of action raised by the plaintiffs. On May 21, 2009, the Born debtors responded. In their response, they first claimed that H&B was not entitled to immunity under section 16–22–310 because it was not acting as an attorney; that is, it was not rendering professional services. Rather, they contended that H&B operated as a debt collector or as a collection agency, and they answered H&B's specific arguments made in its motion.

The circuit judge held a hearing on H&B's motion on July 27, 2009. After hearing arguments from the attorneys, he announced that he was granting the motion to dismiss based on Rule 12(b)(6). The judge further stated that while the facts in the pleadings, if true, may |₄be grounds for sanctions under Arkansas Rule of Civil Procedure 11, attorneys' fees, and ethics complaints, he concluded that no cause of action against H&B existed for actions taken as the professional representative. The judge acknowledged the Born debtors' allegation that H&B acted not as an attorney but as a debt collector, but he determined that the actions alleged in the complaint were all done in H&B's capacity as a law firm.

## I. Abuse of Discretion and Rule 12(b)(6)

In reviewing a circuit judge's decision on a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff.[2] See, e.g., Dollarway Patrons for Better Schools v. Morehead, 2010 Ark. 133, 361 S.W.3d 274. In testing the sufficiency of a complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. Id. However, it is |₅also true that our rules require fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. Ark. R. Civ. P. 8(a)(1); see also Doe v. Weiss,

2. On July 24, 2009, three days before the hearing, the Born debtors filed a Notice of Filing and attached three exhibits. They were (1) Exhibit A—an order of dismissal without prejudice from the Pope County Circuit Court, dismissing appellant Miller's counterclaim against Atlantic Credit in her underlying action; (2) Exhibit B—a dismissal order without prejudice from the Pope County Circuit Court, dismissing Capital One's underlying complaint against appellant Nabours; and (3) Exhibit C—an order of dismissal without prejudice from the Johnson County Circuit Court, dismissing appellant

Born's counterclaims against Atlantic Credit in his underlying action.

These exhibits do not require this court to convert H&B's 12(b)(6) motion to one for summary judgment for two reasons: (1) at the end of the July 27, 2009 hearing, H&B's attorney raised the issue of the voluntary dismissals, and the circuit judge responded "that is not factually before me" and (2) the circuit judge's order states that it is "[b]ased on the pleadings, arguments of counsel, and applicable law." It is thus clear the circuit judge did not rely on the exhibits filed on July 24, 2009, in making his ruling.

2010 Ark. 150, 2010 WL 1253216. Finally, our standard of review for the granting of a motion to dismiss is whether the circuit judge abused his or her discretion. *Doe v. Weiss*, 2010 Ark. 150, 2010 WL 1253216.

### A. Section 16–22–310 Generally

The Born debtors maintain on appeal that section 16–22–310 does not provide immunity to H&B in this case. They make multiple arguments on this point.

■ According to section 16–22–310,

(a) No person licensed to practice law in Arkansas and no partnership or corporation of Arkansas licensed attorneys or any of its employees, partners, members, officers, or shareholders shall be liable to persons not in privity of contract with the person, partnership, or corporation for civil damages resulting from acts, omissions, decisions, or other conduct in connection with professional services performed by the person, partnership, or corporation, except for:

(1) Acts, omissions, decisions, or conduct that constitutes fraud or intentional misrepresentations . . . .

Ark.Code Ann. § 16–22–310 (Supp.2009) ("the immunity statute"). This court has made it clear that the immunity statute protects attorneys from civil liability from those not in privity of contract with them for actions taken during the course of their employment as attorneys. *See, e.g., Nielsen v. Berger–Nielsen*, 347 Ark. 996, 69 S.W.3d 414 (2002). We have held that the statute's plain language provides that immunity and limits it to suits based on conduct in connection with professional services rendered by the attorney. *See, e.g., id.; see also Madden v. Aldrich*, 346 Ark. 405, 58 S.W.3d 342 (2001) (claim for

negligent hiring and supervision not protected by the immunity statute); *Almand v. Benton County*, 145 B.R. 608 (W.D.Ark. 1992) (interpreting section 16–22–310 not to apply to intentional torts like abuse of process). Claims for fraud and intentional misrepresentations are exempted by the express terms of the statute. *See* Ark. Code Ann. § 16–22–310(a)(1).

■ In *Fleming v. Cox Law Firm*, this court recently held that, while fraud is excepted from the immunity statute, the complaint must include more than "conclusory allegations" because otherwise the attorney would improperly be liable "merely upon the act of filing" an improper pleading. 363 Ark. 17, 210 S.W.3d 866 (2005). The *Fleming* court expressed its concern that to subject attorneys to liability for negligent filings would undermine the attorney's duty of care to his or her client and would impede attorneys from "zealously represent[ing] their clients without the threat of suit from third parties compromising that representation." *Id.* at 22, 210 S.W.3d at 869.

■ In the instant case, despite the Born debtors' contention that H&B operates, in part, as a debt-collection agency and should not benefit from the immunity statute, the circuit judge properly dismissed the abuse of process, civil conspiracy, constructive fraud, and negligence claims based on section 16–22–310.[3] The actions the Born debtors maintain give rise to these claims involved H&B's professional legal representation on behalf of its debt-collection clients. For example, these debtors do not bring their claims based on H&B's actions in collecting debts via its website. Rather, their claims are based on H&B's actions in filing com-

---

**3.** The judge also dismissed the defamation claim, but the appellants have abandoned that claim on appeal.

plaints against them. The circuit judge did not err in granting H&B's motion to dismiss on these claims.

The Born debtors, however, go further and raise some individual arguments with respect to their specific causes of action. Yet, it is clear to this court that each of these arguments is an attempt to circumvent the clear intent of the immunity statute. We do note, as the circuit judge observed in the hearing on the motion to dismiss, that the Born debtors could seek sanctions under Arkansas Rule of Civil Procedure 11 or report H&B to the Supreme Court Committee on Professional Conduct, if they believed H&B was practicing law inappropriately.

### B. Abuse of Process

With regard to their abuse-of-process claim, the Born debtors specifically allege that the immunity statute does not apply because H&B's actions constituted intentional misconduct. They cite this court to *Almand v. Benton County,* 145 B.R. 608 (W.D.Ark.1992), in support of this contention. In *Almand,* the federal district court concluded that section 16–22–310 did not apply to intentional actions and that a claim of abuse of process could lie against an attorney. There, a jury found the attorney for a bank liable for abuse of process where he allegedly made false representations to a trial court and caused an order of delivery to be executed against the plaintiff's property even though the plaintiff was in the midst of Chapter 11 bankruptcy proceedings. *Id.* at 617.

■ To state a claim for abuse of process, a plaintiff must show the following: (1) a legal motion was set in motion in proper form, even with probable cause and ultimate success; (2) the procedure was perverted to accomplish an ulterior purpose for which it was not designed; and (3) a willful act is perpetrated in the use of

process which is not proper in the regular conduct of proceedings. *South Ark. Petroleum Co. v. Schiesser,* 343 Ark. 492, 36 S.W.3d 317 (2001).

■ Assuming, however, that there are circumstances in which an attorney could be liable for abuse of process, the Born debtors in the instant case have failed to state a claim. Their allegations are based on the assertion that H&B filed the underlying lawsuits in order to coerce the payment of debts that were not owed. Yet, despite any defects in the procedure surrounding the filing of the underlying complaints or in the complaints themselves, the appellants do not contend that H&B filed them for any ulterior purpose other than to collect on unpaid debts.

■ We conclude that it would pervert the purpose of the immunity statute to allow a plaintiff to bring an abuse-of-process claim against an attorney where that attorney, acting on behalf of his or her client, files a lawsuit that eventually is barred by the statute of limitations or is otherwise deficient. As we noted in *Fleming v. Cox Law Firm,* the mere act of filing suit against a third party should not give rise to attorney liability. 363 Ark. at 22, 210 S.W.3d at 869.

### C. Civil Conspiracy

■ To prove a claim for civil conspiracy, one must show "a combination of two or more persons to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in and of itself unlawful, oppressive or immoral, by unlawful, oppressive or immoral means, to the injury of another". *See, e.g., Dodson v. Allstate Ins. Co.,* 345 Ark. 430, 445, 47 S.W.3d 866, 876 (2001). The complaint alleged that H&B is liable for civil conspiracy because it agreed to assist its clients and took numerous steps with them to

violate the Arkansas Deceptive Trade Practices Act.

H&B relies on *Dodson v. Allstate Insurance Co.* for the proposition that a civil conspiracy cannot exist between a principal and an agent. *Id.* (no civil conspiracy between a corporation and its agents). In addition, H&B cites this court to a persuasive federal case in support of its assertion that the Born debtors should not be able to bring a civil-conspiracy claim under these circumstances. *See Heffernan v. Hunter*, 189 F.3d 405 (3d Cir.1999). In *Heffernan,* a plaintiff sought damages against an attorney under the anti-conspiracy sections of the Civil Rights Act of 1871, codified at 42 U.S.C. section 1985(2). The Third Circuit Court of Appeals extended the holding in its cases barring liability for conspiracy between corporations and their agents and announced a "ban on conspiracies in the attorney-client context." *Id.* at 413.

We adopt the reasoning of the *Heffernan* court and hold that, generally, there can be no civil conspiracy between an attorney and his client for actions undertaken in the furtherance of the legal representation.

### D. Constructive Fraud

Constructive fraud is defined as a breach of a legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others. *See, e.g., Knight v. Day,* 343 Ark. 402, 405, 36 S.W.3d 300, 303 (2001). As opposed to actual fraud, constructive fraud does not include the elements of actual dishonesty or intent to deceive. *Id.*

The Born debtors contend that H&B had a duty, as a debt collector, not to use deceptive, false, or misleading representations. They further contend that the Fair Debt Collection Practices Act creates a duty on the part of H&B that gives rise to a constructive-fraud claim. H&B responds that the immunity statute bars the constructive-fraud claim because it owed no legal or equitable duty to the Born debtors. In *Wiseman v. Batchelor,* this court affirmed the dismissal of a constructive-fraud claim against · an attorney on grounds that "it could discern in the case ... no legal or equitable duty owed" by the attorney to the opposing party. 315 Ark. 85, 89, 864 S.W.2d 248, 250 (1993). Instead, this court observed that the defendant attorney owed a duty to his client and held that "[t]o create a duty in an attorney which flows both to the client and to the opposing party seems to be untenable and in diametric conflict." *Id.* at 89–90, 864 S.W.2d at 250.

It is clear, as a result, that the Born debtors failed to state a claim for constructive fraud because H&B owed no legal or equitable duty to them, and that the claim asserted was properly dismissed.

### E. Negligence

It appears to be undisputed that any claim for simple negligence is barred by the immunity statute. The Born debtors contend, nevertheless, that their claims for negligent hiring, supervision, and training are exempted from the immunity statute. In their brief in response to the motion to dismiss, they directed the circuit court to *Nielsen v. Berger–Nielsen* in support of this contention. 347 Ark. 996, 69 S.W.3d 414 (2002). According to H&B, the negligence claim is barred by the immunity statute and, alternatively, the Born debtors failed to state a claim on which relief could be granted because it owed them no duty.

The Born debtors are correct that this court has exempted claims for negligent hiring and supervision from the im-

munity statute under certain circumstances. *See Madden v. Aldrich,* 346 Ark. 405, 58 S.W.3d 342 (2001); *see also Nielsen v. Berger–Nielsen,* 347 Ark. 996, 69 S.W.3d 414 (2002) (citing *Madden v. Aldrich* ). However, an employer's liability for negligent hiring "rests upon proof that the employer knew or, through the exercise of ordinary care, should have known that the employee's conduct would subject third parties to an unreasonable risk of harm." *Madden,* 346 Ark. at 415, 58 S.W.3d at 350. In the *Madden* case, for example, the employer attorney "admitted that she was concerned that [the employee attorney] might have been taking fees from clients and not sharing them with the firm" and "expressed concerns that he was taking money from clients and not providing any services for them." *Id.*

In the instant case, the complaint alleged that H&B proximately caused damages to the Born debtors by "failing to properly control and supervise its agents, servants, and employees; failing to properly train its agents, servants, and employees; negligently hiring and supervising its agents, servants, and employees; and failing to prevent its agents, servants, and employees from violating Federal and Arkansas laws." No further factual allegations are made. These conclusory statements are not sufficient under the Arkansas Rules of Civil Procedure, which identify Arkansas as a fact-pleading state. *See* Ark. R. Civ. P. 8(a)(1); *see also DeSoto Gathering Co., LLC v. Smallwood,* 2010 Ark. 5, 362 S.W.3d 298. For that reason, the circuit judge did not err in granting H&B's motion to dismiss on the negligence claim.

## F. Fraud

On appeal, the Born debtors contend that the circuit judge erred in dismissing their fraud claim because (1) fraud is clearly exempted from the immunity statute, and (2) they "alleged several misrepresentations of material fact." These debtors specifically contend that H&B made a false representation by sending settlement notices to them that listed "Hosto, Buchan, Prater & Lawrence, PLLC" as its name. They also urge that H&B materially misrepresented to them that the amounts alleged to be owed in the underlying lawsuits were lawfully owing. Finally, they claim that it was a misrepresentation of material fact for H&B to represent that its clients were properly before each court because its clients were not registered with the Arkansas Secretary of State, as required under the Wingo Act in order to bring suit in Arkansas.[4] *See* Ark.Code Ann. § 4–27–1502(a) (A foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority.).

To establish a claim for fraud, a plaintiff must show (1) a false representation of material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance on the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance. *See, e.g., Knight v. Day,* 343 Ark. 402, 405, 36 S.W.3d 300, 303 (2001); *see also DePriest v. AstraZeneca Pharm.,* 2009 Ark. 547, 351 S.W.3d 168. Furthermore, Rule 9(b) of the Arkansas Rules of Civil Procedure re-

---

4. In addition to these alleged misrepresentations, the Born debtors argued below that it was a misrepresentation for H&B to include on the settlement notices a statement that contacting H&B may avoid the necessity for the appellants to file an answer in the underlying lawsuit.

quires the circumstance of fraud to be pled with particularity. Ark. R. Civ. P. 9(b) (2009).

██ In the case before us, the complaint is wholly insufficient with respect to providing particular factual allegations of knowledge of falsity, intent to induce action or inaction in reliance on the representation, justifiable reliance on the representation, and damages. On the contrary, the complaint makes conclusory statements with respect to these elements and fails to comply with Rule 9(b)'s requirement that it state the circumstances constituting fraud with particularity. The circuit judge did not err in dismissing the fraud claims.

### G. Arkansas Deceptive Trade Practices Act

The Born debtors also contend that the circuit judge erred in dismissing their claims under the ADTPA. According to the appellants, H&B violated the ADTPA, and specifically Arkansas Code Annotated section 4–88–113(f), by using "unconscionable, false, or deceptive act[s] or deceptive act[s] or practice[s] in business, commerce, or trade." H&B's response is that, under *Preston v. Stoops,* 373 Ark. 591, 594, 285 S.W.3d 606, 609 (2008), the ADTPA does not apply to attorneys engaged in the practice of law. According to the Born debtors, *Preston* is inapposite because it involved an allegation of the unauthorized practice of law, not violations by a licensed attorney engaged in debt collection under the ADTPA.

██ The circuit judge correctly dismissed this claim. While *Preston* did involve a claim regarding the unauthorized

practice of law, this court unequivocally said that "the ADTPA does not apply to the practice of law." *Id.* at 594, 285 S.W.3d at 609. In so holding, this court noted that "any attempt by the General Assembly to control the practice of law would be a violation of the separation-of-powers doctrine" because "[o]versight and control of the practice of law is under the exclusive authority of the judiciary." *Id.* We affirm on this point as well.

### II. *Fair Debt Collection Practices Act*

██ Regarding the FDCPA claims, the appellants contend that the circuit judge erred in granting H&B's motion to dismiss because H&B is not immune from these claims under the immunity statute, and the complaint stated a claim. H&B does not argue on appeal that it is immune under the immunity statute from the FDCPA.[5] Rather, H&B generally contends that dismissal of the FDCPA claims was proper because the complaint failed to state a claim under the Act.

According to the United States Code, the FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. An FDCPA claim may be brought in "any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurred." 15 U.S.C. § 1692k; *see also Itri v. Equibank, N.A.,* 318 Pa.Super. 268, 464 A.2d

---

**5.** The United States Supreme Court has made it expressly clear that the FDCPA applies to "attorneys who 'regularly' engage in consumer-debt-collection activity, even when that ac-

tivity consists of litigation." *Heintz v. Jenkins,* 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995).

1336 (1983) (interpreting section 1692k to provide concurrent jurisdiction in federal and state courts for FDCPA claims).

In the complaint, the Born debtors contended that "pursuant to 15 U.S.C. § 1692, et seq., a debt collector may not utilize impermissible means to collect debts." The complaint referred to an Eighth Circuit Court of Appeals case for the proposition that impermissible debt-collection practices include "harassing, oppressive or abusive conduct; false, deceptive or misleading representations; and unfair or unconscionable collection methods." *Freyermuth v. Credit Bur. Servs., Inc.*, 248 F.3d 767 (8th Cir.2001) (citing 15 U.S.C. §§ 1692d–f). The *Freyermuth* case cites three specific provisions of the FDCPA, sections 1692d–f. Section 1692d deals with harassment and abuse, section 1692e prohibits false or misleading representations, and section 1692f governs unfair practices. Other than this reference to the Act through its citation to *Freyermuth v. Credit Bureau Services*, the complaint does not specify the precise provisions of the FDCPA that H&B allegedly violated.

It is especially difficult to review some of the Born debtors' arguments because they repeatedly contend that H&B's actions "must be combined and viewed as a pattern and practice which demonstrated a violation of the FDCPA." And yet, they adduce no authority for that proposition, nor does our review of the FDCPA statutes reveal any cause of action for engaging in a "pattern and practice."

The specific FDCPA claims pled in the complaint are that (1) H&B knew or should have known that some of the underlying claims were time barred; (2) the underlying complaints were inadequate; and (3) the settlement notices encouraged individuals to make payments on claims that were time-barred; failed to communicate that H&B was the attorney for the creditor and debt collector; discouraged the appellants from seeking outside counsel by stating that they could avoid "appearing in Court or filing an Answer" by contacting H&B; and bore a fictitious name that would cause the least sophisticated consumer to believe that the communication was from an attorney but was sent without any meaningful review by an attorney.

### A. Statute of Limitations Claims

One of the principal arguments that the Born debtors make is that it was a violation of the FDCPA for H&B to bring the underlying complaints against appellants Born, Johnson, and Nabours when they were barred by the applicable statute of limitations.[6] H&B maintains, on the other hand, that the statute of limitations had not run on these claims because the causes of action arose out of a written contract to which a five-year statute of limitations applies. *See* Ark.Code Ann. § 16–56–115 (Repl.2005). The Born debtors counter this and contend that the three-year statute of limitations applies because H&B failed to attach a copy of a written contract to the complaints brought by the creditors. *Id.* § 16–56–105(1) (all actions founded on a nonwritten contract must be brought within three years). They contend that the party asserting the existence of a written contract has the burden of proving it.

Federal case law reveals that it is widely accepted that bringing litigation or threatening to bring litigation to collect a debt outside the applicable statute of limitations can give rise to a cause of action

---

**6.** The complaint does not allege that the underlying complaints against Miller and Scoggins were time-barred.

under the FDCPA. *See, e.g., Freyermuth v. Credit Bur. Servs., Inc.,* 248 F.3d 767, 771 (8th Cir.2001) (In the absence of a threat of litigation or actual litigation, no violation of the FDCPA where a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid.); *Goins v. JBC & Assoc., P.C.,* 352 F.Supp.2d 262, 272 (D.Conn.2005) (summary judgment in favor of plaintiff where debt collector threatened to sue to collect a time-barred debt); *Kimber v. Fed. Fin. Corp.,* 668 F.Supp. 1480, 1487 (M.D.Ala. E.Div.1987) (unfair and unconscionable for a debt collector to file a lawsuit on a debt that appears to be time-barred, without the debt collector having first determined after reasonable inquiry that the limitations period has been or should have been tolled); *but see Simmons v. Miller,* 970 F.Supp. 661, 665 (S.D.Ind.1997) (no FDCPA violation where the debt collector did not *knowingly* bring suit on a time-barred claim) (emphasis added).

 As noted later in the opinion, the FDCPA claims of debtors Johnson and Nabours are time-barred under the FDCPA's statute of limitations. That leaves the statute-of-limitations claim of debtor Born. Born's FDCPA claim was based on the allegation that the underlying complaint was time-barred. However, the statute of limitations had not yet run on the underlying complaint because it is undisputed that the debt arose from a credit card contract, ⌐19which is subject to the five-year statute of limitations. *See In re Pettingill,* 403 B.R. 624 (E.D.Ark.2009). We conclude that Born's FDCPA claim against debtor H&B was likewise properly dismissed for failure to state a claim.

### B. Procedural Deficiencies

The Born debtors also urge that H&B violated the FDCPA in the following ways: (1) by filing the underlying suits on behalf of clients that were not authorized to do business in Arkansas under Arkansas Code Annotated section 4–27–1502(a) (Repl.2001) ("the Wingo Act allegations"), and (2) by violating Ark. R. Civ. P. 10(d) and 17(a) because the "Affidavit of Debt and Verified Bill of Particulars" attached to the underlying complaints were not sworn to by an agent or employee of a proper plaintiff or original creditor.[7] H&B responds that there was no violation of the Wingo Act because its clients, as debt collectors, were not required to obtain a certificate to do business in Arkansas and that any violation of the Arkansas Rules of Civil Procedure do not give rise to a claim under the FDCPA.

 ⌐20It is disputed at this stage whether the Wingo Act was violated.[8] We conclude, though, that it is unnecessary to resolve the conflict because the Born debtors fail to make any argument or cite any authority for the proposition that a violation of the Wingo Act gives rise to a cause

---

7. In their brief before this court, the appellants also argue that H&B filed suit against Born when he was not the proper debtor and that H&B operated a debt-collection agency without obtaining a license as required by Ark.Code Ann. § 17–24–101 et seq. However, these statements were not clearly alleged in the complaint. Furthermore, as discussed in the Wingo Act violations context, the appellants have made no argument regarding how any violation of Arkansas's state-license requirements might violate the FDCPA.

8. According to H&B, its clients were not required to register with the Secretary of State because they qualified under the exception in section 4–27–1501(b)(1) because they were "securing or collecting debts or enforcing mortgages and security interests in property securing the debts." The Born debtors respond that the exception relates to those collecting secured debts and that it does not apply to a company that is in the regular business of debt collection.

of action under the FDCPA. To the extent they contend that this alleged violation is part of a pattern and practice, as already discussed, they cite no authority for that proposition. This court has repeatedly held that it will not address arguments that lack development and citation to authority. *See, e.g., Koch v. Adams,* 2010 Ark. 131, at 6–7, 361 S.W.3d 817, 821.

■ It is likewise clear that general violations of the Arkansas Rules of Civil Procedure do not necessarily give rise to a claim under the FDCPA. *See Manlapaz v. Unifund CCR Partners,* No. 08 C 6524, 2009 WL 3015166 (N.D.Ill.E.Div. Sept. 15, 2009) (state procedural rule violations are independent from FDCPA considerations; the FDCPA is not to be used simply as a mechanism for enforcing state law); *Higgins v. Capitol Credit Servs., Inc.,* 762 F.Supp. 1128 (D.Del.1991) (FDCPA claim not the proper forum to challenge state court procedures). In the instant case, the Born debtors have failed to cite this court to any case in which a violation of state procedural rules gave rise to a cause of action under the FDCPA. *See, e.g., Koch v. Adams,* 2010 Ark. 131, 361 S.W.3d 817 (This court does not address arguments that lack proper citation to authority.).

The circuit judge did not err in granting H&B's motion to dismiss on this point.

## C. Settlement Notices

The Born debtors next contend that H&B violated the FDCPA by sending settlement notices to them. The complaint, though, does not link these notices specifically to any provision of the FDCPA, and the Born debtors' response to H&B's motion to dismiss indicates that they are "deceptive as part of a larger scheme." As already discussed, any pattern-or-practice argument fails as a matter of law because the Born debtors have not shown that the FDCPA entitled them to relief on such grounds.

■ To the extent they contend that the settlement notices violate the FDCPA because they include misrepresentations, the claim also fails under Arkansas Rule of Civil Procedure 12(b)(6). The settlement notices read as follows:

PLEASE NOTE:

You have been sued. If you would like to arrange to pay the debt, please call our law firm at 800–892–1460. This may avoid the necessity of you appearing in Court or filing an Answer. When calling, please reference our file number, which is found on the top of Court papers.

Thank you for your cooperation.

This is an attempt to collect a consumer debt and any information obtained will be used for that purpose. This communication is from a debt collector.

The Born debtors argue that this notice violated the FDCPA by (1) encouraging the appellants to make payments that are barred by the statute of limitations; (2) failing to communicate that H&B is an attorney; (3) discouraging the appellants from obtaining separate legal counsel by stating that by contacting H&B, the appellants "may avoid the necessity" of appearing in court or filing an Answer; and (4) bearing a fictitious name.

■ In determining whether a communication by a debt collector is false, deceptive, or misleading under the FDCPA, we are obliged to view the communication through the eyes of the "unsophisticated debtor." *See, e.g., Morrison v. Hosto, Buchan, Prater & Lawrence, PLLC,* No. 5:09CV00146JLH, 2009 WL 3010917 (E.D.Ark.2009). In *Morrison v. Hosto, Buchan, Prater & Lawrence, PLLC,* the federal judge dismissed a similar claim

brought on behalf of the Born debtors. In the federal case, the only FDCPA claim brought related to the settlement notices, and the judge held that "[t]he complaint does not allege, nor do the plaintiffs argue, that any statement in the note attached to the summons and complaint was false." *Id.* In the case at hand, as well, the Born debtors have not directed this court to any false statement in the settlement notice.

The circuit judge did not err in dismissing the FDCPA claim on this point because the settlement notice did not contain any false statement, and, more importantly, the Born debtors fail to illuminate how the settlement notice violated any specific provision of the FDCPA.

### D. Scoggins Telephone Call

Appellant Scoggins appears to argue that when he called the number listed on the settlement notice, an employee of H&B told him there was no legal basis for failing to pay the claim and also neglected to inform him that he should seek independent legal counsel.

Taking the second argument first, Scoggins has failed to cite to any provision in the FDCPA or to any other authority to suggest that, under the FDCPA, H&B was obligated to inform debtors that they should seek independent legal advice. This argument has no merit. With regard to the first point, Scoggins has failed to allege which provision of the FDCPA was violated by this alleged statement from an H&B employee and has further failed to develop this argument by citation to authority. *See, e.g., Koch v. Adams,* 2010 Ark. 131, 361 S.W.3d 817. We thus affirm on this point.

### E. FDCPA Statute of Limitations

With regard to appellants Johnson and Nabours, H&B urges that their FDCPA claims are barred by the one-year statute of limitations. 15 U.S.C. § 1692k. The underlying complaint against Johnson was filed in March 2007, and the Nabours complaint was filed on October 31, 2007. The original putative class action complaint was filed in the instant case on February 6, 2009.[9] Thus, depending on when the statute of limitations began to run, it would appear that Johnson's and Nabours's FDCPA claims are time barred.

H&B argues that the statute of limitations under the FDCPA begins to run either on the date the lawsuit is filed or on the date the complaint is served on the defendant. H&B contends that, under either approach, the Johnson and Nabours claims are time-barred. The Born debtors respond that whether the statute had run is a question of fact and asks this court to "adopt a view that the collection of any amounts as a result of any violation of the FDCPA also begins the running of a new limitations period." They cite no authority for this proposition, and we decline the invitation to construe the limitations statute in this vein.

As H&B correctly notes, courts take two approaches in determining when the statute of limitations begins to run on an FDCPA claim arising out of the filing of a lawsuit. *See Schaffhauser v. Citibank (S.D.) N.A.,* 340 Fed.Appx. 128 (3d Cir. 2009) (per curiam) ("[C]ourts are split as to when the FDCPA's one-year statute of limitations begins to run: some have held that such claims accrue upon filing the underlying collection action, *see Naas v. Stolman,* 130 F.3d 892, 893 (9th Cir.1997), while others use the date on which the

---

**9.** The date of the class action complaint was set out in H&B's motion to dismiss and is not contested by the Born debtors.

purported debtor was served with the complaint. *See Johnson v. Riddle*, 305 F.3d 1107, 1113 (10th Cir.2002)."). Since Johnson's and Nabours's FDCPA claims were time-barred under either approach, we affirm the dismissal of the FDCPA claims brought by these two debtors.

Because we affirm, it is unnecessary to address H&B's additional claims regarding res judicata and Arkansas Rule of Civil Procedure 12(b)(8). Furthermore, the Born debtors elected to appeal the dismissal order of the circuit judge, and that order has now been affirmed. Accordingly, the Born debtors have waived the right to plead further, and the circuit judge's order is modified to dismissal with prejudice. *See, e.g., Sluder v. Steak & Ale of Little Rock*, 368 Ark. 293, 245 S.W.3d 115 (2006); *Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 362 Ark. 598, 210 S.W.3d 101 (2005).

Affirmed as modified.

CORBIN, J., not participating.